Filed 9/26/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARGON ENTERPRISES, INC., | B271718 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC546363) |
| v. | |
| BROWNE GEORGE ROSS LLP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Fredrick C. Shaller, Judge. Affirmed in part and reversed in part with directions.

Law Offices of Kyle P. Kelley and Kyle P. Kelley for Plaintiff and Appellant.

Browne George Ross LLP, Eric M. George, Benjamin D. Scheibe and Ira Bibbero for Defendant and Respondent.

————————————

Respondent Browne George Ross LLP (BGR) represented appellant Sargon Enterprises Inc. (Sargon) in long-running litigation against the University of Southern California (USC). After that litigation concluded, Sargon filed the present legal malpractice action against BGR. BGR petitioned to compel arbitration, and the superior court granted the petition and ordered the parties to arbitrate.

The parties litigated two claims before the arbitrator: Sargon's claim against BGR for legal malpractice, and BGR's claim against Sargon for breach of contract. The breach of contract claim alleged that the parties' arbitration agreement precluded resort to the courts to resolve disputes, and thus that Sargon's filing of the malpractice action constituted a breach of the arbitration agreement.

The arbitrator found Sargon's legal malpractice claim was barred by a release of claims earlier entered into by the parties. The arbitrator also found that Sargon had breached the arbitration agreement by filing the malpractice action in superior court and ordered Sargon to pay BGR damages of $200,000. The trial court confirmed the arbitration award and entered judgment.

We reverse in part. We conclude that the arbitrator erred in finding that the parties' arbitration agreement included a promise to forego litigation, and thus in concluding that Sargon breached the arbitration agreement by filing a malpractice action in superior court. We further conclude that the arbitrator's award violated Sargon's statutory right, as articulated in the

2

California Arbitration Act (the Act), Code of Civil Procedure[1] section 1280 et seq., to seek a preliminary determination of arbitrability from *a court*. Therefore, notwithstanding the limited judicial review generally afforded arbitration awards, the present arbitration award is subject to correction.

We do not, however, vacate the arbitration award in its entirety. Because there is no basis for reversing the summary disposition of Sargon's legal malpractice claim against BGR—and because the breach of contract and legal malpractice claims depend on entirely separate facts and legal theories—we can strike the portion of the arbitration award adjudicating BGR's breach of contract claim without affecting the merits of the arbitrator's summary disposition of Sargon's malpractice claim. We therefore direct the trial court to correct the arbitration award and, as corrected, to confirm it.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### The Sargon/USC Litigation

*A.    First Trial and Appeal*

In 1991, Sargon patented a dental implant developed by its president and chief executive officer, Dr. Sargon Lazarof (Lazarof). In 1996, Sargon contracted with USC to conduct a five-year clinical study of the implant. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 754–755 (*Sargon*).)

---

[1]    All subsequent undesignated statutory references are to the Code of Civil Procedure.

In May 1999, Sargon sued USC and members of its faculty for breach of contract.  USC cross-complained.  (*Sargon*, *supra*, 55 Cal.4th at p. 754.)

Before trial, the trial court excluded evidence of Sargon's lost profits on the ground that USC could not reasonably have foreseen them.  A jury then found that USC had breached the contract, and it awarded Sargon $433,000 in compensatory damages.  The jury also found in Sargon's favor on USC's cross-complaint.  (*Sargon*, *supra*, 55 Cal.4th at p. 754.)

Sargon appealed.  The Court of Appeal reversed the judgment, holding that the trial court had erred in excluding evidence of Sargon's lost profits.  (*Sargon*, *supra*, 55 Cal.4th at p. 754.)

B.       *Sargon's Retention of Browne, Woods & George LLP*

In 2005, Sargon retained Browne, Woods & George LLP (BWG) (now known as BGR) to represent it on remand.[2]  The retainer agreement signed by Sargon and BWG in September 2005 contained an arbitration clause, which provided as follows: "Any and all disputes, claims, or proceedings between you and BWG arising out of or relating to any work or services performed by BWG, the nature, terms, or enforceability of this Agreement, any claims for malpractice or professional negligence, collection or payment of bills, fees, and costs, or any dispute of any nature between you and BWG shall be settled by binding and final arbitration held before a single arbitrator from JAMS. . . . [¶]  The parties agree to split evenly the fees and costs of the

---

[2]      In this opinion, we will sometimes use "BGR" to refer to both Browne, Woods & George LLP and Browne George Ross LLP.

4

arbitrator. Arbitration is final and binding on both BWG and you. You and BWG are waiving the right to seek remedies in court, including the right to jury trial. Pre-arbitration discovery is generally more limited than, and different from, court proceedings. An arbitration award is not required to include factual findings or legal reasoning, and your and BWG's right to appeal or to seek modification of arbitration rulings is strictly limited."

### C.     Second Trial

Sargon's case against USC proceeded to retrial. USC moved to exclude as speculative the proffered opinion testimony of one of Sargon's experts, James Skorheim. At the conclusion of an eight-day evidentiary hearing, the trial court excluded Skorheim's testimony. (*Sargon*, *supra*, 55 Cal.4th at pp. 755–767.) Thereafter, in August 2007, the parties stipulated to entry of judgment for Sargon on the breach of contract claim in the amount of $433,000.

### D.     The Interpleader Action

In January 2008, following entry of the stipulated judgment, USC filed an interpleader action against Sargon and several law firms, including BGR, for the resolution of attorney fee disputes. Sargon asked BGR to represent it in the interpleader action.

Before accepting the representation, BGR sent Dr. Lazarof a letter stating that the firm's representation of Sargon presented a potential conflict of interest, as a result of which the firm "would not feel comfortable proceeding absent your written, informed consent indicating that there are no actual or potential disputes or claims between you and our firm accompanied by full mutual releases between my firm and you." The letter then

stated as follows:  "[O]ther than rights and responsibilities specifically set forth in the [September 2005 retainer agreement]—all of which shall bind the parties only from this point forward—there are no additional rights, claims, obligations, liabilities or responsibilities (whether past or present) between you and my firm. . . .  Thus, each party based on known facts accordingly represents and warrants that he/it hereby releases and absolutely forever discharges the other(s) of and from any and all claims . . . and causes of action of every kind and nature whatsoever, by reason of any matter or thing that directly or indirectly is connected with the Action or the parties' relationship as of the date of this Agreement. . . ."  Lazarof signed the letter on behalf of himself and Sargon in February 2008.

### E.     The Second Appeal

Sargon appealed from the judgment entered after the second trial.  In February 2011, the Court of Appeal reversed the judgment on the ground Sargon's expert's testimony should have been admitted, and it remanded for a new trial on lost profits; it also affirmed the trial court's $1.8 million attorney fee award to Sargon.  (*Sargon*, *supra*, 55 Cal.4th at pp. 767.)  However, the Supreme Court granted review and reversed the decision of the Court of Appeal, effectively affirming the $433,000 stipulated judgment.  (*Id.* at p. 781.)

## II.
## The Present Action

### A.     *Sargon's Legal Malpractice Complaint Against BGR*

Sargon filed a complaint for legal malpractice against BGR in May 2014.  The complaint alleged that in August 2007, BGR advised Sargon to enter into a stipulated judgment with USC before appealing the order excluding the testimony of Sargon's

6

lost profits expert. When that order ultimately was affirmed, Sargon allegedly was not permitted to offer alternative evidence of lost profits because BGR had failed to preserve the issue. Sargon asserted that BGR "knew or should have known that Sargon's entry into a stipulated judgment [might] preclude Sargon from introducing evidence relating to lost profits. [BGR], however, advised Plaintiff Sargon to enter into the stipulated judgment. [BGR's] advice, which precluded Sargon from introducing evidence relating to lost profits, fell below the standard of care."

> B.    *BGR's Demand for Arbitration and Motion to Compel Arbitration*

BGR filed a demand for arbitration with JAMS in June 2014. BGR asserted two claims: "(1) for damages resulting from [Sargon's] breach of the arbitration clause in the parties' September 2, 2005 engagement and fee agreement, and (2) to procure an award of declaratory relief establishing the lack of merit to [Sargon's] lawsuit entitled *Sargon Enterprises, Inc. v. Browne George Ross*, LASC Case No. BC546363 (filed May 20, 2014)." Sargon filed an "Answer and Counter-Claim for Legal Malpractice."

BGR then filed a petition to compel arbitration of Sargon's pending superior court action for legal malpractice. The petition asserted that under the terms of the 2005 retainer agreement, "[a]ny and all disputes between BGR and [Sargon] regarding BGR's representation of [Sargon] must be resolved in arbitration." Sargon opposed the petition to compel, contending that although it had agreed to arbitrate disputes with *BWG*, it had never entered into such an agreement with *BGR*.

7

On August 26, 2014, the trial court found that BGR "has met its burden of proof that there is a valid binding arbitration clause in the 9/2/05 retainer agreement between [Sargon] and BWG (now known as [BGR]) and that it is enforceable." The court granted the petition and ordered the parties to arbitrate.

### III.
### Arbitration Proceedings and Petition to Confirm Arbitration Award

*A.    Arbitration Proceedings*

1.    <u>Sargon's legal malpractice claim</u>

The arbitrator summarily rejected Sargon's legal malpractice claim. The arbitrator found that in February 2008, when Sargon retained BGR to represent it in the interpleader action, Sargon released BGR and its attorneys from all claims that existed as of that date. Further, "there is no material issue of fact as to whether the facts giving rise to [Sargon's] pleaded claims of malpractice were known to [Sargon] at the time Dr. Lazarof executed the Release Agreement in February 2008. Those facts—BGR's advice to enter into the stipulated judgment in the USC Action and the effect thereof—were known to [Sargon] at the time of the advice and in February 2008. [¶] . . . All claims based on these facts therefore were released."

2.    <u>BGR's breach of contract claim</u>

Sargon sought leave to file a motion seeking summary disposition of BGR's breach of contract claim, urging that Sargon had a constitutionally protected right to file a lawsuit. The arbitrator denied Sargon's request. Subsequently, the arbitrator held a one-day hearing on BGR's breach of contract claim. At the conclusion of the hearing, the arbitrator found as follows:

8

(1)     BGR proved the existence of a contract—namely, the retainer agreement entered into between the parties in September 2005.  Sargon breached the retainer agreement by filing a malpractice action against BGR in the superior court, "in contravention of the clea[r] contractual clause mandating arbitration for '[a]ny and all disputes, claims, or proceedings between [Sargon] and BWG . . . .'"

(2)     BGR suffered damages as a result of Sargon's breach.  "[Sargon's] breach caused the very injuries—the public airing of a dispute, and multiplication of legal proceedings—[that] arbitration is intended to prevent.  [Sargon's] lawsuit was publicized nationally, with the headlines 'Browne George Faces Malpractice Suit Over Sargon-USC Row' and 'Browne George Gets Arbitration For Sargon Malpractice Suit.'  [Sargon's] lawsuit also multiplied legal proceedings in this matter, as BGR was required to litigate the *post hoc* justifications proffered by [Sargon] in an effort to maintain its lawsuit in court, rather than submit to arbitration, as the Engagement Agreement mandated."  Accordingly, Sargon "inflicted injury on BGR's reputation, for which [Sargon] is liable for general damages."

(3)     Sargon also breached the implied covenant of good faith and fair dealing.  Specifically, Sargon unfairly interfered with BGR's right to receive the benefits of the contract, by breaching the arbitration clause without a good faith belief in its right to do so.  After filing the lawsuit and being apprised of the arbitration clause, Sargon did not voluntarily dismiss its lawsuit and submit its claims to arbitration.

The arbitrator therefore found that BGR had proven that Sargon breached the retainer agreement and awarded BGR $200,000 "as damages against [Sargon]."

9

B.	*Order Confirming Arbitration Award; The Present Appeal*

BGR petitioned to confirm the arbitration award; Sargon opposed the petition to confirm and cross-petitioned to vacate. Sargon argued that the damage award against Sargon for breach of contract exceeded the arbitrator's powers because it violated Sargon's constitutional right to petition, and the arbitrator's award of damages was not rationally related to Sargon's breach.[3]

The trial court granted the petition to confirm and denied the petition to vacate. Judgment on the arbitration award was entered, and Sargon timely appealed.

On July 5, 2017, we issued a letter pursuant to Government Code section 68081 asking the parties to brief the following issues: "(1) Does the California Arbitration Act, including without limitation Code of Civil Procedure sections 1281.2, 1281.7, and 1281.12, express a legislative intent that issues of arbitrability should be resolved by a superior court unless an arbitration agreement specifically provides otherwise? [¶] (2) If so, was the arbitrator's breach of contract award for Sargon's filing of the underlying legal malpractice action inconsistent with Sargon's statutory rights or an explicit legislative expression of public policy, within the meaning of *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32 [(*Moncharsh*)], *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 275–277 [(*Round Valley*)], and *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916–917 [(*Richey*)]?" Both parties filed letter briefs responding to these questions.

---

[3]	Sargon did not seek to vacate the arbitrator's ruling on its legal malpractice claim.

10

## CONTENTIONS

Sargon contends that the arbitrator's award of breach of contract damages violated Sargon's constitutional and statutory right to petition the courts, and the award is subject to judicial review because it contravenes a statutory right or an explicit legislative expression of public policy.

BGR contends that Sargon waived the right to challenge the arbitrator's award of contract damages. Alternatively, BGR urges that the arbitrator's award is consistent with Sargon's right of petition and, in any event, the award is not subject to substantive judicial review.

## DISCUSSION

## I.

### Sargon Did Not Waive Its Right to Challenge the Arbitrator's Award of Contract Damages

We begin with BGR's contention that Sargon waived its objection to the breach of contract award. BGR asserts that a party may "waive any objection to arbitrability by voluntarily submitting to the jurisdiction of the arbitrator, or participating in an arbitration proceeding without objecting to arbitral jurisdiction." In the present case, BGR contends that Sargon waived any objection to the arbitrator considering the breach of contract claim because Sargon did not assert it in the trial court "pre-award."

BGR's waiver argument is without merit. Our Supreme Court rejected a similar argument in *Moncharsh, supra,* 3 Cal.4th at p. 29. There, Moncharsh petitioned the superior court to vacate or correct an unfavorable arbitration award, contending that the parties' agreement to arbitrate was contained within an employment contract with an illegal fee-

11

splitting agreement. The defendant responded that Moncharsh had waived the illegality issue by failing to raise it in the trial court pre-award. The Supreme Court concluded that because the asserted illegality claim would not have been a proper basis for opposing a petition to compel arbitration under section 1281.2, Moncharsh was not required to raise the issue in the trial court pre-award. The Court explained: "Moncharsh does not contend the alleged illegality constitutes grounds to revoke the entire employment contract. Nor does he contend the alleged illegality voids the arbitration clause of that contract. *Accordingly, the legality of the fee-splitting provision was a question for the arbitrator in the first instance.* Thus, Moncharsh was not required to first raise the issue of illegality in the trial court in order to preserve the issue for later judicial review." (*Moncharsh, supra*, 3 Cal.4th at p. 30, italics added.)

As relevant to the present case, the statutory grounds on which a party may oppose arbitration are limited: Pursuant to section 1281.2, a court "shall" order parties to arbitrate if it determines that an agreement to arbitrate exists, unless it finds that (a) the right to compel arbitration has been waived by the moving party, (b) grounds exist for revocation of the agreement, or (c) a party to the arbitration agreement is also a party to a pending court action with a third party arising out of the same transaction. The statute is explicit, moreover, that if the court determines a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy "*may not be refused* on the ground that the petitioner's contentions lack substantive merit." (§ 1281.2, italics added.)

In the present case, Sargon's contention that breach of contract damages were not recoverable went to the "substantive

12

merit" of BGR's claims, *not* to waiver or revocation. Accordingly, such contention was not a proper basis on which to oppose the order to arbitrate, and Sargon's failure to oppose arbitration on that ground did not waive the issue.

Sargon *was* required to raise its objection to a breach of contract award with the arbitrator in order to preserve it for judicial review (*Moncharsh*, *supra*, 3 Cal.4th at p. 30), and it did so. Prior to the arbitration hearing, Sargon urged the arbitrator to summarily dispose of BGR's breach of contract claim because BGR was seeking to recover damages for Sargon's "act of filing a lawsuit," which it alleged was "constitutionally privileged conduct." Sargon made the same point in its opening statement before the arbitrator, asserting that the damages BGR sought "aren't recoverable based upon the filing of a lawsuit because that's a privileged act under the [Code of Civil Procedure]." Then, at the conclusion of the arbitration hearing, Sargon submitted proposed findings of facts and conclusions of law urging that BGR was not entitled to breach of contract damages because (1) BGR obtained specific performance and made a binding election of remedies, (2) "the Legislature has spoken in great detail on the issue of contractual arbitration in the California Arbitration Act, which contains no provisions permitting damages to be awarded when a party seeks relief in Court," and (3) "the public policy goals served by arbitration as expressed in the California Arbitration Act cannot overcome the constitutional right of litigants to petition their government for redress." Accordingly, Sargon adequately preserved for our review the issue of the arbitrator's power to award breach of contract damages. We turn now to that issue.

13

## II.
### Judicial Review of Arbitration Awards

*A.    Overview*

The legal standards governing judicial review of arbitration awards are well established. "California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' (*Moncharsh*[*, supra,*] 3 Cal.4th [at p.] 10).) Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties. (*Id*. at pp. 6, 28.) . . . .

"The California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the Federal Arbitration Act (9 U.S.C. § 10 et seq.) provide limited grounds for judicial review of an arbitration award. Under both statutes, courts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by a corrupt arbitrator; (3) affected by prejudicial misconduct on the part of the arbitrator; or (4) in excess of the arbitrator's powers. (Code Civ. Proc., § 1286.2, subd. (a); 9 U.S.C. § 10(a).) An award may be corrected for (1) evident miscalculation or mistake; (2) issuance in excess of the arbitrator's powers; or (3) imperfection in the form. (Code Civ. Proc., § 1286.6; 9 U.S.C. § 11.)" (*Richey*, *supra*, 60 Cal.4th at p. 916.) Our analysis concerns whether the arbitrator acted in excess of his powers when he awarded BGR damages for Sargon's filing the malpractice action in superior court. (Code Civ. Proc., § 1286.2, subd. (a)(4).)

We review de novo the trial court's decision that the arbitrator did not exceed his powers. (*Richey*, *supra*, 60 Cal.4th at p. 918, fn. 1; *Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1252.)

> B. *Notwithstanding the Limited Judicial Review Normally Afforded Arbitration Awards, an Award Must Be Vacated If It Violates a Party's Statutory Rights or Clearly Defined Public Policy*

One of the ways an arbitrator exceeds his or her powers is by issuing an award "that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey*, *supra*, 60 Cal.4th at p. 916.) Thus, although our Supreme Court has noted that arbitral "finality is the rule rather than the exception" (*Round Valley*, *supra*, 13 Cal.4th at p. 277), it has on several occasions vacated arbitration awards that violate a party's statutory rights or well-defined public policy. Two such cases are illustrative.

In *Round Valley*, a school district notified a probationary teacher that it would not renew his teaching contract for the following academic year. The teacher filed a grievance with the district, alleging that the nonrenewal violated a provision of the collective bargaining agreement (CBA) entered into by the district and a teachers' association. That provision required the district to provide reasons for a decision not to renew a teaching contract and to provide a right to appeal. (*Round Valley*, *supra*, 13 Cal.4th at p. 273.)

An arbitrator found the district had violated the CBA and ordered it to comply. (*Round Valley*, *supra*, 13 Cal.4th at p. 273.) The district then petitioned the superior court to vacate the arbitrator's award, urging that the award violated provisions of

15

the Education Code that permitted the district to decline to renew a teaching contract without providing a statement of reasons or a right of appeal. (*Id.* at pp. 273–274.) The trial court granted the district's petition and vacated the award. (*Id.* at p. 274.)

The Supreme Court held that the trial court properly vacated the arbitration award. It explained that when the Legislature amended the Education Code in 1983, it established a contract renewal procedure in which a hearing and a statement of reasons were not required. Further, under the statutory scheme governing collective bargaining and the reelection of probationary teachers, "a school district's decision not to reelect a probationary teacher after the second year of employment is vested exclusively in the district and may not be the subject of collective bargaining." (*Round Valley*, *supra*, 13 Cal.4th at p. 287.) The arbitrator's contrary decision conflicted with the statute, and "because the arbitrator's decision below is inconsistent with District's statutory rights under the Education Code, the issue is subject to judicial review." (*Id.* at pp. 287–288.)

The Supreme Court similarly concluded in *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 (*Pearson Dental*). There, an employer fired the plaintiff, a janitor, when he was 67 years old. The plaintiff filed a complaint in superior court alleging age discrimination and wrongful termination. (*Id.* at p. 670.) The employer filed a motion to compel arbitration, contending that the plaintiff was bound by a dispute resolution agreement requiring him to submit any disputes arising out of the employment relationship to binding arbitration within one year of the date the dispute arose. (*Id.* at pp. 670–671.) The trial court granted the motion to compel. Thereafter, the arbitrator

16

found the plaintiff's claims were time-barred because they had been submitted to arbitration more than a year after the plaintiff's termination.  (*Ibid*.)  The trial court vacated the arbitration award, concluding that the arbitrator had made an error of law by, among other things, misinterpreting the tolling provisions of section 1281.12.  (*Id*. at p. 672.)

The Supreme Court agreed with the trial court that the arbitration award was properly vacated.  It explained that the arbitrator had made a clear error of law because under the tolling provision of section 1281.12, the plaintiff's filing of the civil action tolled the applicable time limitations contained in the arbitration agreement, and thus plaintiff's claims were not time-barred.  (*Pearson Dental*, *supra*, 48 Cal.4th at p. 673–675.)  Further, the error was subject to judicial review:  "Here, as a result of the arbitrator's clear legal error, plaintiff's claim was incorrectly determined to be time-barred.  Indeed, the legal error misconstrued the procedural framework under which the parties agreed the arbitration was to be conducted, rather than misinterpreting the law governing the claim itself.  [Footnote omitted.]  It is difficult to imagine a more paradigmatic example of when 'granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights' (*Moncharsh*, *supra*, 3 Cal.4th at p. 32) than the present case, in which, as a result of allowing the procedural error to stand, and through no fault of the employee or his attorney, the employee will be unable to receive a hearing on the merits of his FEHA claims *in any forum*."  (*Id*. at pp. 679–680.)

Considered together, *Round Valley* and *Pearson Dental* stand for the proposition that where an arbitrator's decision has the effect of violating a party's statutory rights or well-defined

17

public policies—particularly those rights and policies governing the conduct of the arbitration *itself*—that decision is subject to being vacated or corrected. With this framework in mind, we now consider Sargon's claim of error.

## III.
## The Arbitrator's Damages Award Violated Sargon's Statutory Right to Initiate Litigation in Court

*A. The California Arbitration Act*

As pertinent here, " ' "[t]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action." ' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; see also Cal. Const., art. 1, § 3(a).) The right of petition in the context of private agreements to arbitrate is set out in the Act, which "represents a comprehensive statutory scheme regulating private arbitration in this state. [Citation.]" (*Moncharsh, supra*, 3 Cal.4th at p. 9.)

"The fundamental premise of the [arbitration] scheme is that '[a] written agreement to submit [either a present or a future controversy] to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281.) [Footnote omitted.] The statutes set forth procedures for the enforcement of agreements to arbitrate (*id.*, §§ 1281.2–1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree (*id.*, §§ 1282–1284.2), describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced (*id.*, §§ 1285–1288.8), and specify where, when, and how court proceedings relating to arbitration matters

18

shall occur (*id.*, §§ 1290–1294.2)." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830.)

As relevant to BGR's breach of contract claim, the Act provides that "[i]f a controversy referable to arbitration under an alleged agreement is involved in an action or proceeding pending in a superior court," a party may file a petition for an order to arbitrate in lieu of an answer to the complaint. (§§ 1292.4, 1281.7.) If a petition is filed, the superior court "shall order the petitioner and the respondent to arbitrate the controversy" if the court determines that an agreement to arbitrate the controversy exists, unless it finds that the right to compel arbitration has been waived, or grounds exist for the revocation of the agreement, or a party to the arbitration agreement is also a party to a pending court action with a third party arising out of the same transaction and there is a possibility of conflicting rulings. (§ 1281.2.)

The Act thus anticipates that a party to an arbitration agreement may file a lawsuit in court, and it describes the procedural vehicles through which the opposing party may respond—i.e., it may file *either* an answer to the complaint *or* a section 1281.2 petition to compel. The Act also prescribes the remedy the court must order if any party demands arbitration of an arbitrable dispute that is the subject of a lawsuit—specific performance of the arbitration agreement, *not* a damages award for breach of contract. (See, e.g., *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057 ["A petition to compel arbitration is a suit in equity seeking specific performance of an arbitration agreement."].)

Significantly for our purposes, the Act separately provides that a party may challenge the enforceability of an arbitration

19

agreement in court without forfeiting the right to arbitrate should the challenge to the arbitration agreement be unsuccessful. Specifically, section 1281.12 says: "If an arbitration agreement requires that arbitration of a controversy be demanded or initiated by a party to the arbitration agreement within a period of time, *the commencement of a civil action by that party based upon that controversy*, within that period of time, shall toll the applicable time limitations contained in the arbitration agreement with respect to that controversy, from the date the civil action is commenced until 30 days after a final determination by the court that the party is required to arbitrate the controversy, or 30 days after the final termination of the civil action that was commenced and initiated the tolling, whichever date occurs first." (Italics added.)

The Act thus recognizes that a party to an arbitration agreement may elect to initiate a civil action, rather than an arbitration proceeding, and it specifically protects the party's right to do. Our Supreme Court recently explained why the Legislature wrote such protection into the Act: "According to its legislative history, [section 1281.12] prevents 'parties from being either forced to abide by arbitration agreements of dubious validity instead of seeking court evaluation, initiating costly and duplicative proceedings, or being unfairly deprived of any forum for resolution of the dispute. *Supporters observe that there are many legitimate reasons why a party might file a lawsuit in court, rather than demanding or pursuing arbitration.* Among these are the following: (1) the plaintiff may believe the claims are not subject to arbitration because the arbitration agreement is unenforceable on grounds of unconscionability or similar concepts; (2) there may be a dispute about whether the particular

20

claims at issue do or do not fall within the scope of an arbitration agreement; (3) the plaintiff may contend that one or more of the statutory grounds for denying a petition to compel arbitration set forth in Code of Civil Procedure section 1281.2 exist, assuming the defendant does file a petition to compel arbitration in response to the plaintiff's filing of the lawsuit; (4) the plaintiff may prefer a court trial or jury trial and simply be hopeful that the defendant will not assert any right to arbitrate the claims, for whatever reason [indeed, the defendant may decide that it prefers a court proceeding as well]; and (5) the plaintiff might not even be aware that there is an arbitration agreement governing the controversy.' (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1553 (2005–2006 Reg. Sess.) for hearing Apr. 5, 2005, p. 3, underlining and extra capitalization omitted.)" (*Pearson Dental*, *supra*, 48 Cal.4th at pp. 673–674, italics added.)

  B. *The California Arbitration Act Preserves the Right of Parties to an Arbitration Agreement to Initiate Litigation in Court*

  The courts have relied on the statutory provisions described above to hold that even where a party has entered into an arbitration agreement, that party may file a complaint in superior court seeking resolution of a dispute potentially subject to the arbitration agreement. In *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1795–1796 (*Brock*), the court explained: "A party to a contractual arbitration agreement may compel a recalcitrant party to comply with a valid agreement by means of a petition pursuant to section 1281.2, which is in essence a suit in equity to compel specific performance of the arbitration agreement. [Footnote omitted.] [Citation.] [¶] But as this court recognized long ago, contractual arbitration is

21

in no sense . . . a usurpation or ouster of the judicial power vested in the trial court of this state by our Constitution. (*Snyder v. Superior Court* (1937) 24 Cal.App.2d 263, 267.) *As a result, there is nothing to prevent one of the parties to a contractual arbitration provision from resorting initially to an action at law.* (*Spence v. Omnibus Industries* (1975) 44 Cal.App.3d 970, 975 [(*Spence*)]; *Ross v. Blanchard* (1967) 251 Cal.App.2d 739, 742–743.) The other party, if determined to pursue arbitration, must then take action to compel arbitration. (*Spence, supra,* 44 Cal.App.3d at p. 975.) 'A right to compel arbitration is not . . . self-executing. If a party wishes to compel arbitration, he must take active and decided steps to secure that right, and is required to go to the court where the [other party]'s action [at law] lies.' (*Gunderson v. Superior Court* (1975) 46 Cal.App.3d 138, 143.) Consequently, the party seeking to enforce the contractual arbitration clause must file the section 1281.2 petition in the action at law (or raise it as an affirmative defense in the answer) or else the right to contractual arbitration is waived." (Italics added; see also *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 44–45 [quoting *Brock*].)

The court similarly described the effect of an arbitration agreement on the rights of parties to pursue civil litigation in *Spence, supra,* 44 Cal.App.3d at p. 975: "Plaintiffs initially waived arbitration by filing a suit in the superior court on the basic contract without seeking arbitration. [Citations.] *This was their prerogative.* A provision for arbitration does not divest the court of jurisdiction to hear the controversy. It merely means that if one of the parties chooses arbitration, he may so petition the court and the court will stay proceedings, order arbitration, then confirm the award. (Code Civ. Proc., § 1280 et seq.) *But*

*lacking a request for arbitration, the courts stand ready, willing and able to decide controversies between the parties even though a provision for arbitration exists.*"  (Italics added.)

And in *Ross v. Blanchard* (1967) 251 Cal.App.2d 739, 742, the court said as follows:  "Our own reading of California's arbitration statute and the cases interpreting it convinces us that *a contract to arbitrate by no means precludes a party to the contract from initially resorting to the courts. . . .*  [¶] . . . [¶] From [section 1281.4] and other sections of the statute, both directly and by implication, it is apparent, [¶] 1. either party may demand arbitration and both may waive it [citation]; [¶] 2. a party may be estopped to demand arbitration; [¶] 3. the particular issue in controversy may not fall within the terms of the arbitration agreement [citation]; [¶] 4. an agreement to arbitrate is an affirmative defense [citations]."  (Italics added.)

> C.   *Sargon's Claim That the Arbitrator Exceeded His Powers By Entering a Breach of Contract Award Is Subject to Judicial Review*

Taken together, the authorities discussed above lead us to conclude that an arbitration agreement requires a party to submit a dispute to arbitration *if ordered by a court to do so*—but it does *not* preclude a party from initiating a civil action or asking a court to resolve disputed issues over an arbitration agreement's applicability or enforceability.  To the contrary, the Act expressly protects a party's right to do so.

In the present case, therefore, none of Sargon's actions breached the arbitration provisions of the retainer agreement. The retainer agreement contained a garden-variety arbitration clause, requiring the parties to submit to arbitration "[a]ny and all disputes, claims, or proceedings between you and BWG."  As

we have said, such a provision is not self-executing and does not preclude a party from commencing an action in the superior court. Nor does an arbitration provision prohibit a party from filing opposition to a petition to compel arbitration in order to urge that the arbitration agreement does not bind it, or is unenforceable, or is inapplicable to the parties' dispute.

Sargon's initiation of its malpractice lawsuit in superior court, therefore, was entirely consistent with the arbitration agreement. Under that agreement, and pursuant to California law, Sargon was permitted both to file a complaint in superior court and to oppose BGR's petition to compel arbitration. Only *after* the superior court ordered it to submit to arbitration was it required to do so. The arbitrator thus erred when he concluded that Sargon committed an actionable breach of the arbitration agreement by "fil[ing] a malpractice claim against BGR in the Los Angeles Superior Court" and refusing to "voluntarily dismiss its lawsuit and submit its claims in arbitration."[4]

---

[4] Citing *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 241 (*Tiri*), BGR urges that parties to an arbitration agreement may choose to delegate questions of arbitrability to the arbitrator, and that the parties did so here. BGR is correct only in part. Although parties to an arbitration agreement may agree to delegate questions of arbitrability to the arbitrator, it is *the court*, not the arbitrator, that must decide the "threshold issue" of " 'the validity . . . of the precise agreement to arbitrate at issue . . . before ordering compliance with that agreement. . . .' (*Rent-A-Center*[*, West, Inc. v. Jackson* (2010)] 561 U.S. [63], 71 [(*Rent-A-Center*)].)" (*Tiri, supra*, at p. 241, fn. 4.) The reason for this rule is clear: "Delegation clauses have the potential to create problems of circularity. For example, suppose an arbitration agreement delegates the issue of enforceability to the arbitrator. If the arbitrator concludes that the arbitration

24

Further, the arbitrator's error had the effect of depriving Sargon of a statutory right—namely, the right pursuant to the Act (as articulated in sections 1281, 1281.12, 1281.2, and 1292.4) to test *in court* the validity and enforceability of an arbitration agreement before submitting to arbitration. (See *Round Valley*, *supra*, 13 Cal.4th at pp. 287–288; *Pearson Dental*, *supra*, 48 Cal.4th at p. 681.) And, as in *Pearson Dental*, "[i]t is difficult to imagine a more paradigmatic example of when 'granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights' " (*Pearson Dental*, *supra*, 48 Cal.4th at p. 680) than the present case, in which Sargon suffered the entry of a $200,000 damages award against it for taking an action specifically authorized by the arbitration statute—that is, challenging the validity of an arbitration agreement in court—in precisely the manner the statute permits. Therefore, notwithstanding the limited judicial review generally afforded arbitration awards, the present arbitration award is subject to our judicial review.[5]

---

agreement is, in fact, not enforceable, this would mean that the entire agreement, *including the delegation clause*, is unenforceable—a finding that would undermine the arbitrator's jurisdiction to make that finding in the first place." (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559.) Thus, even where the parties purport to delegate issues of arbitrability to the arbitrator, *the court* must determine whether the delegation provision is enforceable before ordering the parties to arbitration. (E.g., *Rent-A-Center*, *supra*, 561 U.S. at pp. 69–70.)

[5]     Having so concluded, we do not consider Sargon's alternative grounds for vacating the arbitration award.

25

# IV.

## The Proper Course Is to Correct, Rather Than
## to Vacate, the Arbitration Award

Having concluded that the arbitrator made an error of law that is subject to judicial review, we turn to the final issue before us: whether the error requires that the award be vacated in full or merely corrected.[6]

If parties to an arbitration award petition to confirm or correct the award, the court must take one of three actions: It must *either* (1) confirm the award, (2) vacate the award in its entirety, or (3) "correct[] the award and confirm[] it as corrected." (§ 1286.) A court may "correct the award and confirm it as corrected if the court determines that: [¶] . . . [¶] . . . The arbitrator[] exceeded [his] powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted. . . ." (§ 1286.6, subd. (b).)

Where a part of an arbitration award cannot be confirmed due to the arbitrator's error of law, the award may be corrected by striking the erroneous part if doing so does not affect the merits of the part that remains. Thus, for example, in *Jones v. Humanscale Corp.*, *supra*, 130 Cal.App.4th 401, the Court of Appeal determined that an arbitrator properly upheld a covenant not to compete entered into between a former employer and employee, but erred in ordering the arbitrator's administrative

---

[6] Although neither party filed a petition to correct the award, we have the power to correct sua sponte because "[a] petition or response requesting that the award be vacated has been duly served and filed and; [¶] . . . All petitioners and respondents are before the court. . . ." (§ 1286.8, subd. (b)(1); see also *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 412.)

fees and compensation to be split equally between the employer and employee. Because the correction of the award's division of arbitration fees and expenses would "not affect the arbitrator's findings on the merits of the substantive issues," the trial court "had authority to correct the arbitration award *and should have exercised its power to do so* rather than vacating the entire award because of the erroneous division of the arbitration fees and expenses." (*Id*. at p. 412, italics added.)

Similarly, in *Ling v. P.F. Chang's China Bistro, Inc. supra*, 245 Cal.App.4th 1242, the Court of Appeal concluded that the arbitrator exceeded his power by awarding statutory attorney fees to a defendant employer who defeated an employee's Labor Code claims. However, the court rejected the plaintiff employee's claim that the error required the trial court to vacate the *entire* award: "[T]he trial court correctly noted that it had no authority to upset the arbitrator's rulings on the merits of plaintiff's overtime and missed meal periods claims—rulings unreviewable under the Act. [Citation.] Vacatur of the award in its entirety under Code of Civil Procedure section 1286.2 would have defeated the finality of those rulings and undermined the Act's purpose to resolve disputes efficiently and conclusively." (*Id*. at p. 1259.)

In the present case, BGR's breach of contract claim against Sargon, and Sargon's legal malpractice claim against BGR, are based on separate and distinct facts and legal theories. Therefore, the portion of the arbitration award adjudicating BGR's breach of contract claim can be stricken without affecting the merits of the arbitrator's summary disposition of Sargon's malpractice claim. For this reason, and because further adjudication of the legal malpractice claim before a new arbitrator would undermine the Act's purpose of conclusively

27

resolving disputes, the proper course is to correct, rather than to vacate, the arbitration award.

## DISPOSITION

The judgment and order granting the petition to confirm the arbitration award are reversed insofar as they award contract damages to BGR, and otherwise are affirmed.  The matter is remanded to the superior court with directions (1) to correct the award by striking the portion that found Sargon breached the contract and ordered Sargon to pay damages to BGR, and (2) to enter judgment on the corrected award.  The parties shall bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**

EDMON, P. J.

We concur:

LAVIN, J.

JOHNSON, (MICHAEL) J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.