Filed 5/29/19

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LEVINSON ARSHONSKY & KURTZ LLP, | B289308 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC106289) |
| v. | |
| DAVID KIM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge. Dismissed.

Law Office of Robert S. Myong and Robert S. Myong for Defendant and Appellant.

Levinson, Arshonsky & Kurtz, Robert A. Levinson, and David Krol for Plaintiff and Respondent.

_____

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II.B and II.C.

David Kim appeals following the denial of his petition to compel arbitration of a fee dispute with his former attorneys pursuant to the Mandatory Fee Arbitration Act (MFAA), Business and Professions Code section 6200, et seq.  As described more fully below, the MFAA permits a client 30 days in which to request nonbinding arbitration by a local bar association of any dispute involving attorneys' fees or costs before a collection related matter can proceed.  The trial court found Kim waived his right to arbitration under the MFAA by failing to request arbitration within the required 30 days.  Because the denial of a petition to compel a MFAA arbitration is not an appealable order, we lack jurisdiction to consider Kim's appeal.

## I.  BACKGROUND

### A.  Framework of the MFAA

The MFAA establishes a system of arbitration before local bar associations in attorney fee disputes to provide "an effective inexpensive remedy to a client which does not necessitate the hiring of a second attorney." (*Manatt, Phelps, Rothenberg & Tunney v. Lawrence* (1984) 151 Cal.App.3d 1165, 1174.)  Under the MFAA, arbitration is optional for the client, but mandatory for attorneys if properly initiated by the client. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 984 (*Aguilar*).)  Attorneys are required to notify any client disputing legal fees or costs of the client's right to arbitration by sending a written notice prior to, or at, the time the lawyer begins any collection related proceeding against the client. (Bus. & Prof. Code, § 6201, subd. (a).)  "[T]he client's failure to request arbitration within 30 days after receipt of

2

notice from the attorney shall be deemed a waiver of the client's right to arbitration . . . ." (*Ibid.*)[1]

If the client timely petitions for arbitration with the local bar association, any action filed by the attorney is automatically stayed. (Bus. & Prof. Code, § 6201, subd. (c).) "The stay may be vacated in whole or in part, after a hearing duly noticed by any party or the court, if and to the extent the court finds that the matter is not appropriate for arbitration under the provisions of this article." (*Ibid.*)

The arbitral decision in a MFAA proceeding is not binding. (Bus. & Prof. Code, §§ 6203, subd. (b), 6204.) If, after the arbitration, either party is not satisfied with the result, "the MFAA has played its role, and the matter . . . continue[s] without it." (*Aguilar, supra,* 32 Cal.4th at p. 991 (conc. opn. of Chin, J.).) A party has 30 days in which to seek a trial after arbitration, or the arbitration award becomes final. (Bus. & Prof. Code, § 6203, subd. (b).) "This trial after arbitration is conducted de novo, essentially as if no arbitration had occurred." (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 373 (*Maynard*).)

### B. Factual Background

The law firm Levinson, Arshonsky & Kurtz LLP (LAK) and Kim signed a written engagement letter in 2014. The letter stated Kim retained LAK for employment law advice, and that if he engaged the firm to perform additional services, the existing agreement would govern payment for those additional services

---

[1] There are other ways clients can waive their rights to arbitration under the MFAA, but failure to petition for arbitration within 30 days of notice is the only one at issue in this appeal.

3

unless the firm asked Kim to sign a new engagement letter. LAK alleges that in 2016, after several years of providing legal services, LAK began representing several of Kim's restaurant-related entities in employment litigation matters. These entities included Gen Alhambra, LLC, Gen Torrance, LLC, Golden Den Corp., RD Restaurant Group, Inc., Den 103, LP, Den 105, LP, and Den 107, LP.

Some months later, Kim and LAK had a disagreement over LAK's request to obtain new retainer agreements and fee deposits for the litigation representations. Following Kim's refusal to sign new engagement agreements or pay the requested retainers, LAK withdrew from representing Kim and his entities. After its withdrawal, LAK claimed Kim owed the firm $124,630.57 for work performed prior to the withdrawal. This included $11,662.59 on the original employment law advice engagement, and $112,967.98 in five different litigation matters involving Kim, Gen Torrance LLC, Gen Alhambra LLC, and Golden Den Corp.[2] Kim asserted the services for which LAK was seeking payment were unauthorized, and refused to pay.

On August 18, 2017, pursuant to the MFAA, LAK provided notices for each of the disputed billing matters to Kim and attorney Robert Myong (who was representing Kim), advising of Kim's right to arbitrate the fee disputes through a local bar association. The notices stated, in underlined font, that Kim's

---

[2] LAK alleged it was owed $19,756.06 for *Almedia et al. v. Gen Torrance, LLC*, $7,515.10 for *Do v. Gen Alhambra et al.*, $11,935.12 for *An et al. v. Gen Alhambra, LLC, et al.*, $65,164.72 for *Nunez et al. v. Golden Den Corp.*, and $8,596.98 for *Nunez et al. v. Gen Alhambra, LLC*.

4

failure to request arbitration within 30 days of receipt of the notice would constitute a waiver of his right to arbitrate.  Myong and Kim received the notices on August 21 and 22, 2017, respectively.

On September 19, 2017 (27 days after Kim received notice), Myong filed a petition with the Los Angeles County Bar Association (LACBA) for fee arbitration on behalf of "Gen Restaurant Management Inc."  The petition itself is not in the record.  Instead, Kim provided a letter sent to Myong from LACBA acknowledging receipt of the arbitration petition.  This letter lists "Gen Restaurant Management Inc." as the only petitioner—it does not mention Kim or any of the entities for whom LAK allegedly performed litigation work.[3]  Nor does the letter specify the particular disputed claim(s) for which arbitration was sought.

## C.    **Procedural Background**

On September 28, 2017, LAK filed a complaint in Los Angeles Superior Court for breach of written contract and common counts (services rendered and account stated), naming Kim as the sole defendant.  LAK asserted it had not been served with a request for arbitration on behalf of Kim, nor had it received payment to satisfy Kim's outstanding balance.  The complaint sought $124,630.57 in damages, plus prejudgment interest.

---

[3]    The confirmation letter from LACBA is addressed to "Robert Myong, Gen Restaurant Management LLC," but lists the party petitioning for arbitration as "Gen Restaurant Management Inc."  Kim asserts the correct name is "Gen Restaurant Management, LLC."

5

On October 3, 2017, Myong asked LAK to dismiss the complaint because Kim had filed a demand for arbitration with LACBA which was still pending. LAK responded that "Gen Restaurant Management LLC" had filed the petition for fee arbitration, but the firm's retainer agreement was with Kim individually and LAK had never represented Gen Restaurant Management LLC. LAK asserted that because Kim did not file a petition for fee arbitration within the 30 days permitted by law, he had waived his right to arbitrate and the firm intended to proceed with the lawsuit. LAK indicated the firm would agree to arbitration only if Kim agreed the arbitration would be binding. Kim refused, and indicated he would move to compel arbitration.

On October 27, 2017, Kim (through his counsel) filed a petition for arbitration with LACBA on behalf of Gen Alhambra, LLC, Gen Torrance, LLC, Golden Den Corp., RD Restaurant Group, Inc., Den 103, LP, Den 105, LP, Den 107, LP, and David Kim. LAK objected to the October 27, 2017 petition as untimely under Business and Professions Code section 6201, subdivision (a) as well as the LACBA rules governing MFAA arbitrations.

On November 3, 2017, Kim filed a petition in the Superior Court to compel arbitration, which asked the court to dismiss and/or stay LAK's lawsuit pending arbitration before LACBA. LAK opposed the petition, and filed its own motion to vacate the automatic stay under Business and Professions Code section 6201, subdivision (c), so its lawsuit could proceed.

In arguing his petition for arbitration was timely, Kim claimed both he and the pertinent entities filed a demand for arbitration with LACBA on September 19, 2017. At the March 7, 2018 hearing before the trial court on the petition to compel

arbitration, Kim's counsel stated the online LACBA form only provided space to list two client parties, but that Kim and all the entities LAK represented were identified in documentation submitted to LACBA along with the first petition. Kim's counsel claimed that after the first petition was filed, LACBA requested a paper copy and the paper copy submitted by Kim in response to that request was the October 27, 2017 petition. In addition to failing to provide a copy of the original petition for arbitration and any documents provided to LACBA along with it, Kim did not provide the trial court any documentation regarding the purported request from LACBA to submit a paper copy. The responses from LACBA to the first and second petitions, which are in the record, do not suggest that anyone other than Gen Restaurant Management LLC was included in the original arbitration request.

The trial court denied Kim's petition to compel arbitration and granted LAK's motion to vacate the stay. The court rejected Kim's suggestion that he was listed on the initial arbitration request, saying it "appears to be clear . . . the defendant, Kim, did not timely submit the petition for arbitration based on the 30-day deadline that was built into the [statute] and, therefore, arbitration has been waived." The court went on to say that "defendant Kim tried to do a relation-back attempt and filed it well beyond the 30-day deadline when the petition to arbitrate was [due]—defendant Kim's name was added in October when the claim should have been made in September."

Kim filed a timely notice of appeal from the order denying his petition to compel arbitration. He did not seek review of the order granting LAK's motion to vacate the stay.

7

## II.  DISCUSSION

### A.  This Court Lacks Jurisdiction to Consider Kim's Appeal

#### 1.  *Code of Civil Procedure Section 1294(a)*

"Appellate courts have jurisdiction over a direct appeal, like the present one, only where there is an appealable order or judgment." (*In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1342.)  Whether an order or judgment is appealable "is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5.)  Unless an order is expressly made appealable by a statute, this court has no jurisdiction to consider it. (*Steen v. Fremont Cemetery Corp.* (1992) 9 Cal.App.4th 1221, 1226.)

"The general list of appealable civil judgments and orders is codified in [Code of Civil Procedure] section 904.1." (*Gastelum v. Remax Internat., Inc.* (2016) 244 Cal.App.4th 1016, 1021.)  Additional arbitration-related appealable orders are codified in the California Arbitration Act (CAA), a " 'comprehensive statutory scheme regarding private arbitration in this state.' " (*Aguilar*, *supra*, 32 Cal.4th at p. 983.)  Among other things, the CAA provides that an aggrieved party may appeal from "[a]n order dismissing or denying a petition to compel arbitration." (Code Civ. Proc., § 1294, subd. (a).)  Kim argues we should read this provision in the CAA to authorize his appeal under the MFAA.

As we shall explain, the CAA and MFAA are located in distinct parts of the California code.  Each provides a different arbitration framework governed by discrete procedural rules.  The CAA provision permitting appeal of a denial of a petition to

compel contractual arbitration (Code Civ. Proc., § 1294, subd. (a)), does not apply to mandatory fee arbitration under the Business and Professions Code, and does not authorize Kim's appeal.

### 2. *The CAA and MFAA Are Separate Statutory Regimes*

The California Code contains several distinct statutory schemes providing for arbitration, each with its own procedural nuances. To mention just three, California law provides for judicial arbitration of civil cases with limited amounts in controversy (Code Civ. Proc., § 1141.10, et seq.), private contractual arbitration under the CAA (Code Civ. Proc., § 1280, et seq.), and arbitration of disputes concerning payment of attorneys' fees and costs under the MFAA (Bus. & Prof. Code, § 6200, et seq.).

Our Supreme Court has highlighted the need to consider each statutory regime individually. For example, when comparing judicial and contractual arbitration, it noted that "in light of their mutual exclusiveness and independence, the judicial arbitration law and the contractual arbitration law . . . differ the one from the other in various features. [¶] [A]s to commencement, contractual arbitration arises solely out of an arbitration agreement, specifically, a *written* arbitration agreement . . . whereas judicial arbitration may be imposed on the parties . . . , whether or not they agree in writing or otherwise." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 344.) Further differences include the mechanism for selecting the arbitrator, the scope of the arbitrator's powers, the scope of discovery, the applicability of the rules of evidence, and

9

whether the arbitrator's decision is binding. (*Id*. at pp. 344—345.) The Supreme Court has similarly highlighted the procedural and policy differences between judicial arbitration and the MFAA, holding relief under Code of Civil Procedure 473, subdivision (b) is available in some circumstances for deadlines applicable to judicial arbitration awards but not similar deadlines applicable to MFAA awards. (*Maynard*, *supra*, 36 Cal.4th at pp. 378—382.)

The CAA and MFAA are likewise distinct. The procedures for one cannot be substituted for, or added on to, the procedures for the other absent legislative direction to do so. (E.g., *Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 562 [right to trial de novo in MFAA did not override contractual agreement for binding arbitration pursuant to CAA] (*Schatz*); *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 46—47 [error to apply MFAA procedures to arbitration subject to CAA].)

As is evident from their respective statutory text, the MFAA and CAA "do not even govern the same subject. The MFAA concerns nonbinding arbitration that the parties did not agree to in advance, while the CAA concerns binding arbitration agreed to in advance." (*Schatz*, *supra*, 45 Cal.4th at 574; accord, *Rosenson v. Greenberg Glusker Fields Claman & Machtinger LLP* (2012) 203 Cal.App.4th 688, 693 ["The Legislature created the MFAA as a separate and distinct arbitration scheme applicable to disputes between clients and attorneys over legal fees, costs, or both."].) " 'The statutes [codifying the CAA] set forth procedures for the enforcement of agreements to arbitrate ([Code Civ. Proc.,] §§ 1281.2—1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree (*id.*, §§1282—1284.2), describe the circumstances in which arbitrators'

10

awards may be judicially vacated, corrected, confirmed, and enforced (*id.*, §§ 1285—1288.8), and specify where, when, and how court proceedings relating to arbitration matters shall occur (*id.*, §§ 1290—1294.2).' [Citation.] . . . [¶] By contrast, the MFAA constitutes a separate and distinct arbitration scheme. . . . [¶] In contrast to the CAA, which is governed by the Code of Civil Procedure, the MFAA has its own rules and limitations, as set forth in the Business and Professions Code. . . . [T]he MFAA 'is a closed system and the binding arbitration agreed to . . . is the arbitration conducted by [a] local bar association *under the MFAA*, not some other private alternative dispute resolution provided by another forum.' " (*Aguilar*, *supra*, 32 Cal.4th at pp. 983—984.)

To illustrate some pertinent differences between the CAA and the MFAA, the right to contractual arbitration under the CAA is not self-executing. A party to an agreement to arbitrate may initially resort to an action at law. (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 767—768.) The CAA accordingly provides for a litigant to petition to compel arbitration (Code Civ. Proc., §§ 1281.2—1281.95) and for appeal of the denial of such a petition (*id.*, § 1294, subd. (a)). "The party seeking resolution via contractual arbitration must also file a motion in the action at law to stay it (§§ 1281.4, 1292.8); it will not be stayed automatically." (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796.) If such a stay request is made, the court "shall . . . stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies." (Code Civ. Proc., § 1281.4)

11

In contrast, the MFAA does not provide procedures for a petition to compel arbitration or to appeal the denial of any such petition. Instead, the client has a unilateral right to compel MFAA arbitration within 30 days of receiving notice of a proceeding to recover fees and/or costs. Failure to give such notice by the lawyer seeking fees is grounds to dismiss any court complaint. (Bus. & Prof. Code, § 6201, subd. (a); see also *Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1090 [court has discretion to dismiss suit for payment of fees where law firm fails to comply with Bus. & Prof. Code, § 6201, subd. (a)].) To further enforce the client's right to fee arbitration, the MFAA provides any court or other action is automatically stayed upon the filing of an appropriate request for arbitration, with the stay to remain in force until the arbitration terminates. (*Id.*, subd. (c).) The stay cannot be vacated in whole or in part until after a noticed hearing. (*Ibid.*) In other words, whereas a party in a CAA proceeding must move to stay the parallel non-arbitration proceeding, the MFAA adopts the reverse approach—the parallel nonarbitration matter is automatically stayed, and the party seeking to proceed outside arbitration must move to lift the stay.

The CAA and MFAA do cross-reference one another procedurally with regard to the confirmation, correction, or vacatur of a MFAA arbitral award. The MFAA borrows the CAA's provisions for the confirmation of contractual arbitration awards, stating a MFAA arbitral award concerning fees and costs may be confirmed, corrected, or vacated "in the same manner as provided in Chapter 4 (commencing with Section 1285) of Title 9 of Part 3 of the Code of Civil Procedure." (Bus. & Prof. Code, § 6203, subd. (b).)

12

In light of this statutory cross-reference, it is unsurprising the cases on which Kim relies to support his contention that the CAA authorizes his appeal all concern petitions to confirm, correct, or vacate a MFAA arbitration award, or cases involving the CAA alone. (*Fleur du Lac Estates Assn. v. Mansouri* (2012) 205 Cal.App.4th 249 [dismissing appeal of order denying reconsideration of fee and cost motion in CAA proceeding]; *Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 9 [petition to correct a MFAA award]; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 588 [petition to confirm a MFAA award]; *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796 [discussing appealability of fees and costs in connection with petition to compel contractual arbitration under CAA]; *Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1453—1454 [motion to vacate a MFAA award]).) None involves the type of order at issue here, or applies a provision of the CAA absent the MFAA's express reference to, or incorporation of, that provision.

Given the distinct statutory regimes and purposes of the CAA and the MFAA, the lack of authorization for this appeal in the MFAA or any of the cases relied upon by Kim, and the Supreme Court's repeated admonition that we should refrain from reading a provision from one statutory arbitration regime into another, we hold that Code of Civil Procedure section 1294, subsection (a) does not authorize the instant appeal. We therefore lack jurisdiction to hear it.

### B. We Decline to Treat the Appeal as a Writ Petition

Kim requests that, should we determine the CAA does not authorize his appeal, we exercise our discretion to characterize the appeal as a petition for a writ of mandamus to compel the trial court to order statutory arbitration pursuant to the MFAA. We decline to do so.

We recognize that we have the power in appropriate cases to treat an appeal as a petition for an extraordinary writ. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400—401.) This power is reserved, however, for unusual and exigent circumstances. (*Ibid*.; *Estate of Weber* (1991) 229 Cal.App.3d 22, 25.) No such unusual or exigent circumstances exist here. The trial court's denial of the petition to compel fee arbitration is over 14 months old. (See *In Re Twighla T.* (1992) 4 Cal.App.4th 799, 803 [16 months after order being challenged "not a reasonable time for seeking extraordinary relief"].) Nor did Kim request the trial court stay the litigation, which has now been pending for approximately 21 months.

Moreover, a petition to treat a nonappealable order as a writ should only be granted when the circumstances are " ' " 'compelling enough to indicate the propriety of a petition for writ . . . in the first instance.' " ' " (*Wells Properties v. Popkin* (1992) 9 Cal.App.4th 1053, 1055.) Putting aside the lack of unusual or exigent circumstances, Kim has not established the facts before the trial court compelled a grant of his petition to compel arbitration, as substantial evidence supports the trial court's finding that Kim did not timely seek arbitration pursuant to the MFAA, and therefore waived his rights to arbitration pursuant to that statute.

## C. Sanctions Are Not Warranted, Nor Can LAK Be Awarded Attorney Fees for Representing Itself

LAK argues Kim's appeal was frivolous, and sanctions should be imposed equivalent to the attorney fees incurred by LAK in responding to the appeal. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive— to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) This appeal does not indisputably lack merit. Although we find a lack of jurisdiction to review the underlying arguments, the issue appears to be one of first impression and litigated in good faith. Nor did this appeal harass LAK or delay the effect of an adverse judgment, because no such judgment yet exists.

Equally important, LAK's request for sanctions equivalent to its fees violates the well-established principle that absent specific circumstances not present here a law firm representing itself is not entitled to attorney fees. (*Trope v. Katz* (1995) 11 Cal.4th 274, 292.) Nor can a law firm litigating in propria persona "recover sanctions . . . in the form of an award of attorney fees," even if sanctions are warranted. (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 520.) These principles apply when an attorney at the law firm is representing the firm in the circumstances presently before us. (*Witte v. Kaufman* (2006) 141 Cal.App.4th 1201, 1211 [law firm suing in its own right and appearing through one of its members comparable to sole practitioner representing himself or herself].)

15

Self-represented attorneys are not entitled to such fees because awarding fees to self-represented attorneys but not to other self-represented litigants would suggest " 'the time and opportunity an attorney gives up when he or she chooses to litigate a case in propria persona are somehow [more] important and worthy of compensation than those of other pro se litigants.' " (*Musaelian v. Adams*, *supra*, 45 Cal.4th at p. 519.) "Such disparate treatment between attorney and nonattorney litigants would be viewed by the public as unfair, allowing only lawyer litigants to qualify for fee awards." (*Ibid.*) " ' "The public perception of fairness in the legal system" ' " therefore outweighs a self-represented " ' "lawyer litigant's claim to an attorney fee award." ' " (*Id*. at pp. 519—520.)

## III. DISPOSITION

The appeal is dismissed. The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>

WEINGART, J.[*]

We concur:

JOHNSON, Acting P. J.          BENDIX, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16