Filed 4/18/25  Madrigal v. Garfield Beach CVS CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JENNIFER M. MADRIGAL, | B336387 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC695352) |
| GARFIELD BEACH CVS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

Law Offices of Anita Grace Edwards and Anita Grace Edwards for Plaintiff and Appellant.

Payne & Fears, Daniel F. Fears, Andrew K. Haeffele, and Leilani E. Jones for Defendant and Respondent.

*   *   *

## I.    INTRODUCTION

Plaintiff and appellant Jennifer M. Madrigal appeals from a judgment confirming an arbitration award in favor of defendant and respondent Garfield Beach CVS, LLC (CVS) on Madrigal's various employment-related claims. The arbitration award determined that after application of Code of Civil Procedure section 1281.12—the tolling provision of the California Arbitration Act (Code Civ. Proc., § 1280 et seq. (CAA))[1]— Madrigal's claims were barred by the applicable statutes of limitation contained within the CVS-employee arbitration agreement, which applied the same time bars "that would apply in court." The terms of this agreement had been expressly incorporated into the parties' voluntary and joint written stipulation to submit the dispute to binding arbitration after Madrigal's complaint was filed in the trial court. The court approved the joint stipulation—the arbitration contract here— and ordered the case to arbitration, later denying Madrigal's petition to vacate the award and granting CVS's petition to confirm it, followed by entry of judgment against Madrigal.

On appeal, Madrigal contends she never entered into the CVS arbitration agreement during her employment, the provisions of which, she argues, were not incorporated into the parties' stipulation, do not control, and are illegal and unconscionable. She asserts the arbitrator exceeded their powers in various ways, including by finding her claims time-barred, and materially and detrimentally affected her rights, furnishing grounds for vacation of the award under section 1286.2,

---

[1]    Further unspecified statutory references are to the Code of Civil Procedure.

subdivisions (a)(4) and (a)(5). She contends the trial court erred by denying her petition to vacate the award and granting CVS's petition to confirm it, without the court having independently determined whether the CVS arbitration agreement was unconscionable.

Most, if not all, of Madrigal's claims on appeal stem from a misplaced premise that the relevant arbitration contract at issue here is the CVS-employee arbitration agreement, of which Madrigal electronically acknowledged her receipt and review during her employment and from which she did not take the required steps to opt out. While the terms of the CVS arbitration agreement, including its statute of limitations and opt-out provisions, applied to the dispute and governed the arbitration proceedings, they did so because the parties' joint stipulation to submit Madrigal's claims to binding arbitration was expressly "pursuant to" that incorporated agreement, as properly determined by the arbitrator. By entering into the joint stipulation and thereby agreeing to arbitrate the dispute "pursuant to" the CVS arbitration agreement, Madrigal accepted that agreement's terms as part of the operative arbitration contract and conceded their validity and applicability to her claims. Her challenges on appeal to that agreement's validity or the application of its terms as governing the arbitration are thus waived and beyond the scope of review under the doctrine of invited error.

To the extent any of Madrigal's claims may be preserved, we find no error in the trial court's denial of her petition to vacate the arbitration award or its later confirmation of it and we affirm the judgment.

3

## II.    BACKGROUND

A.    *CVS Arbitration Agreement, Claims, and Lawsuit*

In March 2014, Madrigal was hired by CVS to be a shift supervisor. In May 2014, she began reporting to Robert Garcia[2], a general store manager. By October 2014, Madrigal had not performed certain tasks related to her electronic review and acknowledgment of CVS's arbitration policy, which was covered in a computerized "module" course employees were required to take and complete.

On October 6, 2014, Madrigal completed the module course by "clicking through" the electronic pages of the training guide and arbitration course and ultimately acknowledging her receipt and review of it at the end of the process. The electronic acknowledgment form she completed stated that "[b]y clicking the 'Yes' button below, I am acknowledging and agreeing:

"• that I have carefully read the CVS Health Policy, 'Arbitration of Workplace Legal Disputes' (the 'Policy') and understand that it applies to me;

"• that I will raise any questions I may have about the Policy to my supervisor or Human Resources and may seek independent legal advice as well;

"• that I can obtain copies of the Policy from my supervisor, Human Resources or the CVS Health Policy & Procedure Portal;

"• that I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;

"• that, to opt out, I must mail a written, signed and dated letter, stating clearly that I wish to opt out of this Policy to

---

[2]    Though Garcia was named as a defendant, the record reflects he never appeared in the action and he is not a party to this appeal.

4

[mailing address], which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy;

"• that by being covered by the Policy and not opting out, I and CVS Health are obligated to go to arbitration instead of court to resolve legal claims covered by the Policy;

"• that by being covered by the Policy and not opting out, I and CVS Health are giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others to decide claims covered by the Policy;

"• that this electronic communication satisfies any requirement that such communication be in writing; and

"• that my click of the 'Yes' button creates an electronic signature that is legally binding.

As noted, Madrigal electronically completed the acknowledgment form on October 6, 2014. She did not thereafter exercise her right to opt out of the arbitration agreement, later attesting in a declaration that "[a]fter completing the [arbitration] training, [she] got so busy at work [that she] was never able to follow-up on the opt-out letter." Nor, she declared, did she read the CVS "Policy and Procedure" section of the arbitration agreement, which she says was located on a separately accessible CVS database.

The CVS arbitration policy and agreement also included the following terms relevant here: (1) the parties would arbitrate any employment-related claims involving alleged violations of law (with certain exceptions, including claims pertaining to workers' compensation or an employee benefit plan) before the American Arbitration Association (AAA), using AAA's Employment Arbitration Rules then in effect; (2) an employee "accept[s] the policy by continuing their employment . . . after

5

becoming aware of the policy" and not opting out; (3) all claims in arbitration are subject to the same statutes of limitation that would apply in court, by making a demand for arbitration to AAA within the limitations period, otherwise the claim is "waived"; the parties will "select the arbitrator by mutual agreement and will have the opportunity to conduct discovery, bring dispositive motions, be represented by attorney(s) (or not, as they prefer) and present witnesses and evidence at a hearing"; and the arbitrator had the authority to resolve "disputes arising out of or relating to the validity, enforceability, or breach of the Policy" with some exceptions not relevant here.

The AAA Employment Rules referenced in and incorporated by the CVS arbitration agreement included a provision governing the manner of initiating claims "within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator." These Rules also authorized the arbitrator to order discovery and to "allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case."

As Madrigal later alleged in her complaint, in March 2016, she was forced to resign on account of the hostile work environment she was subjected to because of sexual harassment by her supervisor. She claims she was subjected to disparate treatment and disparaging comments based on her sex while reporting to Garcia. She alleges she called CVS's ethics hotline repeatedly about Garcia's misconduct, but nothing was done and when she complained to a loss prevention investigator, she was threatened with a lawsuit and employment termination.

On February 22, 2017, Madrigal received a right-to-sue letter from the former Department of Fair Employment and Housing (DFEH).[3] Just shy of one year later, on February 20, 2018, she filed her complaint against CVS in superior court. The complaint alleged causes of action for: sex and gender discrimination in violation of Government Code section 12940, subdivision (a) of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq., FEHA); harassment in violation of Government Code section 12940, subdivision (j); retaliation in violation of Government Code section 12940, subdivision (h); constructive termination in violation of public policy; and violation of Labor Code sections 201 and 203, for unpaid wages. The prayer requested as relief compensatory and punitive damages, and attorney fees.

CVS answered the complaint, alleging affirmative defenses that included the statute of limitations and that Madrigal was bound by an arbitration agreement requiring submission of her claims to binding arbitration.

B.    *Joint Stipulation and Order to Arbitration*

On June 27, 2018, counsel for CVS provided Madrigal's counsel by letter the complete CVS arbitration agreement, including the policy section and Madrigal's electronic acknowledgment, and asked whether Madrigal would stipulate to binding arbitration of her claims, asserting she was bound by the agreement in any event.

On September 18, 2018, Madrigal and CVS jointly "stipulate[d] and agree[d]" in writing to submission of the entire

---

[3]    By legislative amendment to Government Code section 12901 in 2022, the name of the Department of Fair Employment and Housing was changed to the Civil Rights Department. (Stats. 2022, ch. 48, § 30.)

action to arbitration "pursuant to the terms of the Arbitration Agreement," which contract was specifically identified in the stipulation as the agreement "entered into between the parties on October 6, 2014"—the date Madrigal had electronically acknowledged her receipt and review of the CVS arbitration agreement. The stipulation further referenced CVS's counsel's letter of June 27, 2018, transmitting the entire CVS arbitration agreement to Madrigal's counsel. And it provided that: "the Parties now agree that this matter should be submitted to binding arbitration, pursuant to the terms of the Arbitration Agreement"; "[a]ll of [p]laintiff's claims in this case shall be submitted to final and binding arbitration pursuant to the terms of the Arbitration Agreement"; "[t]he parties agree to meet and confer regarding the selection of a mutually agreeable arbitrator through AAA and if they are unable to agree to an AAA arbitrator that the arbitrator will be selected pursuant to the AAA process applicable to employment arbitration"; and "in the event that a dispute arises regarding any terms in the Arbitration Agreement, neither party has waived its right to have the dispute resolved by the arbitrator." The parties also agreed that the "action shall be stayed pending the completion of binding arbitration."

On September 18, 2018, the trial court entered an order on the joint stipulation, ordering "all of [Madrigal]'s claims in this case … submitted to final and binding arbitration" and staying the action "pending completion of binding arbitration." Thus, the court ordered the case to binding arbitration based on the

8

stipulation and without the need to determine a petition to compel arbitration under section 1281.2.[4]

C.  *Arbitration Proceedings*

Arbitration was ultimately initiated by CVS with AAA in September 2019, a year after the parties' joint stipulation and the court's arbitration order.[5]

The arbitrator conducted interim proceedings, issuing several orders. In those orders, the arbitrator noted that Madrigal did "not challenge the Arbitration forum" but she did dispute that the terms of the CVS arbitration agreement governed and asserted that its terms were unconscionable. The arbitrator further observed that Madrigal agreed the arbitrator had "jurisdiction to decide" these disputed issues. After briefing by the parties, the arbitrator determined in February 2021, that it is "the Arbitrator who has the authority to determine if the terms of the [CVS] Arbitration Agreement govern this Arbitration"; "It is the Arbitrator's role to resolve the meaning of t[he] terms of the Joint Stipulation and the applicability of the [CVS] Arbitration Agreement to this Arbitration"; and the "AAA Rules govern this Arbitration," including Rule 6(a), which provides that the "arbitrator shall have the power to rule on his

---

[4]     Section 1281.2 generally provides that on petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate, the trial court must order the petitioner and respondent to arbitrate the controversy unless, as relevant here, the court determines that grounds exist for rescission of the agreement.

[5]     The record indicates that there was some dispute as to which party had the responsibility of initiating arbitration. On September 5, 2019, CVS's counsel e-mailed AAA the joint stipulation to submit the action for arbitration. On September 12, 2019, AAA sent a letter to the parties' counsel acknowledging receipt of the joint stipulation to arbitrate.

9

or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

The arbitrator then set a briefing schedule for CVS's intended dispositive motion based on the statute of limitations. The arbitrator also requested briefing on Madrigal's request to conduct discovery, later ruling that discovery was not necessary at that point as Madrigal's request had not targeted the threshold issue the arbitrator was addressing—whether the joint stipulation incorporated the CVS arbitration agreement.

On March 18, 2021, CVS moved the arbitrator to dismiss Madrigal's first through fourth causes of action as time-barred.[6] In support, CVS cited paragraph 4a of the policy section of its arbitration agreement, which addressed the applicable statutes of limitation, as incorporated into the parties' joint stipulation. As noted, paragraph 4a of the policy and procedure section of the CVS arbitration agreement provided: "All claims in arbitration are subject to the same statutes of limitation that would apply in court. To initiate a claim in arbitration, an Employee or CVS

---

[6] CVS had similarly so moved in 2020, before the initially selected AAA arbitrator. That arbitrator treated the motion as one for summary adjudication, meaning not on the pleadings, and entered an order granting the motion as to the first through fourth causes of action and denying it as to the fifth for Labor Code violations. That arbitrator subsequently made belated conflict disclosures, prompting Madrigal to object to the arbitrator remaining. That arbitrator was removed from the proceeding by AAA in May 2020, and her order granting CVS's motion was later vacated by the new arbitrator. We therefore do not address the vacated order of the initial arbitrator. A new arbitrator was selected in July 2020, and CVS renewed its dispositive motion. In the meantime, Madrigal filed a motion in superior court to vacate the first arbitrator's award and for the court to determine the unconscionability of the arbitration agreement. On July 23, 2020, the superior court "vacated" that motion.

10

Health must make a written demand for arbitration and deliver it (i) by hand or first[-]class mail to the other party <u>and</u> (ii) by hand or first[-]class mail or electronically to [AAA] within the applicable statute of limitations period. Otherwise, the claim will be waived as provided for by applicable law." CVS also asserted that Madrigal's unconscionability arguments as to the CVS arbitration agreement had been waived by her entry into the September 18, 2018 joint stipulation to arbitrate her claims.[7]

Madrigal's opposition to CVS's motion disputed that the CVS arbitration agreement had been incorporated into the joint stipulation or that its terms governed the arbitration.

On May 5, 2021, the arbitrator construed CVS's motion as one for summary adjudication as to the first four causes of action of Madrigal's complaint and granted it. At the threshold, the arbitrator concluded that Madrigal, through her counsel, had unequivocally agreed to arbitrate her causes of action by entering into the joint stipulation. The arbitrator also found that Madrigal had never challenged the joint stipulation as unconscionable and did not raise unconscionability as to the CVS arbitration agreement to the trial court before the court ordered the case to arbitration based on the joint stipulation. And the arbitrator found it undisputed that Madrigal had, while still employed by

---

[7] During the arbitration proceedings, Madrigal contended that the CVS arbitration agreement was unconscionable, and she asked the arbitrator to declare it so. The arbitrator declined to make this determination, concluding the joint stipulation "moot[ed]" the issue. But the arbitrator added in a footnote to the award that the CVS arbitration agreement likely satisfied the procedural and substantive requirements to avoid unconscionability under *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*).

CVS, completed the electronic acknowledgement form confirming she had read and understood the CVS arbitration agreement, including its policy and procedure section.

On the merits of CVS's motion, the arbitrator determined as a matter of contractual interpretation that because the joint stipulation—the parties' operative arbitration agreement—had expressly incorporated the CVS arbitration agreement, its terms were a part of their agreement to arbitrate. The arbitrator then concluded that paragraph 4a of the policy and procedure section of the CVS arbitration agreement subjected the parties to statutes of limitation as if they were in court, just as it says. The arbitrator found that applying those statutes of limitation, taking into account the tolling provisions of section 1281.12, Madrigal's four causes of action were all time-barred.[8]

For the FEHA causes of action, the arbitrator determined that the applicable statute of limitations was one year after Madrigal's receipt of the DFEH right-to-sue letter, which bar became operative, she determined, on February 22, 2018. (See former Gov. Code, § 12965, subd. (b).)[9] But Madrigal had filed her complaint in superior court on February 20, 2018, two days before. The arbitrator further concluded that after the trial court ordered the matter to arbitration on September 18, 2018, by

---

[8]     Section 1281.12 provides: "If an arbitration agreement requires that arbitration of a controversy be demanded or initiated by a party to the arbitration agreement within a period of time, the commencement of a civil action by that party based upon that controversy, within that period of time, shall toll the applicable time limitations contained in the arbitration agreement with respect to that controversy, from the date the civil action is commenced until 30 days after a final determination by the court that the party is required to arbitrate the controversy. . . ."

[9]     See now Government Code section 12965, subdivision (c)(1)(C).

operation of section 1281.12, Madrigal had two days plus 30 days by which to initiate arbitration, or, as the arbitrator determined, by October 21, 2018. Because the matter was not submitted to arbitration (regardless of who initiated it) until September 2019, the arbitrator concluded that Madrigal's FEHA causes of action were time-barred.

For the fourth cause of action, wrongful termination in violation of public policy, the arbitrator found the applicable statute of limitations was two years from the accrual date of Madrigal's separation from employment on March 15, 2016, or March 15, 2018. (See § 335.1.) As noted, Madrigal filed her complaint on February 20, 2018. Thus, the arbitrator determined that when the trial court issued its order directing the case to arbitration on September 18, 2018, Madrigal had 50 days[10] (20 remaining per section 335.1 plus 30 under section 1281.12) by which to initiate arbitration. Again, the arbitrator concluded that Madrigal had not done so, and therefore the fourth cause of action was also time-barred.

On July 28, 2021, Madrigal requested dismissal without prejudice of her fifth cause of action for Labor Code violations.

On August 25, 2021, the arbitrator issued the final award, dismissing Madrigal's first through fourth causes of action with prejudice, and dismissing the fifth cause of action without prejudice per Madrigal's request.

---

[10] While it appears that the arbitrator's date calculations may have been erroneous (e.g., the correct number of days appears to be 53 and not 50 with respect to the fourth cause of action), this error makes no difference to the outcome. Moreover, we do not review such errors of fact in an arbitration award. (*Bacall v. Shumway* (2021) 61 Cal.App.5th 950, 961 (*Bacall*).)

D.    *Petition to Vacate Arbitration Award*

On November 29, 2021, Madrigal petitioned the trial court to vacate the arbitration award under section 1286.2. She argued that the arbitrator had exceeded their powers by concluding that the joint stipulation had incorporated the terms of the CVS arbitration agreement. Madrigal further argued that the final award violated public policy because the CVS arbitration agreement was illegal, asserting that paragraph 4a—its statute of limitations provision—was a purported illegal waiver of her statutory rights under FEHA. She also contended the arbitrator had refused to hear evidence material to the controversy by not permitting Madrigal to petition the trial court for a ruling on whether the CVS arbitration agreement was unconscionable while the arbitration proceedings were pending. Finally, Madrigal contended that the trial court, not the arbitrator, was required to make this latter determination.

CVS opposed Madrigal's petition to vacate the final arbitration award. On April 6, 2022, the trial court issued its order denying Madrigal's petition to vacate. The court recognized that the grounds for vacating an arbitration award were limited to those specified at section 1286.12 and found that no such grounds had been shown. The court determined that the arbitrator had not conducted an "unfair proceeding" and that the award was based on legal and factual conclusions that did not exceed the arbitrator's powers, but which were beyond the court's authority to review, even if erroneous. The court further determined there was no indication the arbitrator had refused to hear evidence material to the controversy, as Madrigal had argued. Rather, Madrigal's inability to proceed to the discovery stage of the arbitration proceedings and beyond was because of

14

the arbitrator's conclusion that her claims were time-barred, with no discovery necessary for that determination. The trial court also declined to determine the unconscionability of the underlying CVS arbitration agreement.[11]

Ultimately, the trial court concluded that Madrigal's petition to vacate did not sufficiently establish a basis for relief on the statutory grounds that the arbitrator had exceeded her power or that Madrigal's rights had been substantially prejudiced by the arbitrator's claimed refusal to hear evidence material to the controversy or failure to determine necessary issues. (§ 1286.2, subds. (a)(4) & (a)(5).)

E.  *Petition to Confirm Arbitration Award*

On October 27, 2023, CVS petitioned the trial court to confirm the arbitration award under section 1285. Madrigal's opposition raised the same arguments previously asserted in her prior petition to vacate the award, incorporating those arguments by reference.

On January 23, 2024, the trial court granted CVS's petition to confirm the arbitration award, concluding that Madrigal's opposition "makes no argument as to why the arbitration agreement should not be confirmed. Further, any arguments as to vacating the award have already been addressed" by the court's prior order denying Madrigal's petition to vacate. Weeks later, the trial court entered judgment in favor of CVS.

Madrigal timely appealed from the judgment.

---

[11]    On June 10, 2022, Madrigal appealed from that order.  In an unpublished opinion, we dismissed the appeal as being from a nonappealable order. (*Madrigal v. Garfield Beach CVS, LLC* (July 28, 2023, B321255) [nonpub. opn.].)

15

## III. DISCUSSION

A. *The Parties' Arbitration Agreement and the Scope of Our Review*

Preliminarily, we identify the arbitration agreement at issue here—the parties' joint stipulation. This conclusion and our construction of the stipulation together subsume many of Madrigal's various, scattered, and restated arguments on appeal. She does not challenge the existence of a valid agreement between the parties to arbitrate their dispute. But, on appeal, she reprises her arguments that the joint stipulation did not incorporate the terms of the CVS arbitration agreement, that certain of the agreement's terms are unconscionable, and that the trial court erred by not independently reviewing that agreement for unconscionability in determining her petition to vacate the award. Having identified the relevant arbitration contract, we proceed to construe its meaning to address Madrigal's principal claims on appeal.

" ' " The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." [Citations.] "Such intent is to be inferred, if possible, solely from the written provisions of the contract." [Citations.]' [Citation.] The contractual language must be construed in the context of the document as a whole and in the circumstances of the case. [Citation.] We 'give effect to all of a contract's terms, and . . . avoid interpretations that render any portion superfluous, void, or inexplicable.' [Citation.] [¶] ' " '[T]he parties may incorporate by reference into their [arbitration] contract the terms of some other document. . . . But each case must turn on its facts. For the terms of another document to be incorporated into the document executed by the parties the reference must be

16

clear and unequivocal, the reference must be called to the attention of the other party and [they] must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties.' " ' [Citation.]" (*Remedial Construction Services, LP v. AECOM, Inc.* (2021) 65 Cal.App.5th 658, 663 (*Remedial Construction*).)

As noted, the arbitrator here determined in an interim order that she had the authority to interpret the arbitration contract and its scope of arbitrability, while observing that Madrigal did not appear to contest this authority in the arbitral forum. According to the arbitrator, Madrigal had asserted in her briefing that " '[o]nce a matter has been submitted to arbitration, it is the arbitrator's job [and] not the job of the court to resolve all questions needed to determine the controversy' " (bold emphasis omitted) and that " '[t]he arbitrator has the authority to decide enforceability of terms or the applicability of such terms in the Joint Stipulation.' "

In her final award, the arbitrator analyzed the correspondence between counsel leading to the joint stipulation, including the transmission of the full CVS arbitration agreement to Madrigal's counsel, and the language of the joint stipulation itself, along with the factual circumstances under which Madrigal had acknowledged her receipt and review of the CVS arbitration agreement on October 6, 2014, and then failed to opt out of that agreement because she " 'got so busy at work.' "

The arbitrator concluded that the language of the joint stipulation, which was expressly entered into " 'pursuant to the terms of the [CVS] Arbitration Agreement,' " clearly incorporated the terms of that agreement, including those terms governing the applicable statute of limitations and the opt-out provision. The

17

arbitrator said that although Madrigal may have disputed the facts concerning her acknowledgment of her receipt and review of the CVS arbitration agreement on October 6, 2014, "undisputed evidence weighed in favor of a finding" against Madrigal on this issue. But more importantly, the arbitrator correctly determined that any such factual dispute was "not material to the [parties'] voluntary assent to the Joint Stipulation[,] which is the contract being enforced."

On this issue, the arbitrator ultimately found: "Counsel undisputedly and voluntarily agreed to arbitration by executing the Joint Stipulation. The Joint Stipulation is the contract to arbitrate. No argument has been made that further discovery is needed to prove that the parties through their counsel suffered fraud, duress, or misrepresentation in executing the Joint Stipulation. The entire premise of [Madrigal's] arguments and request for further discovery center on [her] voluntary execution of the [CVS] Arbitration Agreement on October 6, 2014. This position disregards the undisputed fact that [Madrigal] did voluntarily assent to the Joint Stipulation[,] which clearly incorporates the terms of the [CVS] Arbitration Agreement and which the Court relied on in ordering this Arbitration."

On appeal, Madrigal again does not challenge that the joint stipulation is the parties' operative arbitration contract and she does not assert its invalidity or unconscionability. Rather, she maintains that the joint stipulation does not incorporate the terms of the CVS arbitration agreement because it does not refer to that agreement "with particularity" and that the joint stipulation is therefore ambiguous, requiring extrinsic evidence to construe it. Madrigal specifically claims that the reference in the joint stipulation to the "Arbitration Agreement entered into

18

between the parties on October 6, 2014," was "merely a recital of the prior communications between the attorneys for the parties" and not a concession that she had in fact agreed to the terms of the CVS arbitration contract or had been provided with the full agreement or access to it on that date. And she contends that the terms of the CVS arbitration agreement cannot have been incorporated into the joint stipulation because the stipulation did not attach that agreement.

Although we are generally not reviewing the arbitrator's legal and factual conclusions, we independently determine that by entering into the joint stipulation, which unambiguously, on its face, and without reservation incorporated the terms of the CVS arbitration agreement, Madrigal has invited error with respect to these just-described claims and she has waived them.

" 'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' [Citation.] 'The "doctrine of invited error" is an "application of the estoppel principle": "Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. [Citation.] . . . At bottom, the doctrine rests on the purpose of the principle, which is to prevent a party from misleading the trial court and then profiting therefrom in the appellate court.' [Citation.] The doctrine of invited error is applicable to a situation where a party invites the court to rule against it on a particular issue and then challenges the merits of that ruling on appeal. [Citation.]" (*Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1203–1204 (*Diaz*); see *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 (*Norgart*).)

19

Error is not "invited" unless its inducement by an appellant was a deliberate tactical choice as opposed to mere acquiescence in a judicial determination. (*Diaz*, *supra*, 16 Cal.App.5th at p. 1204.) But voluntary entry into a binding stipulation satisfies the requirement of a deliberate tactical choice for the purpose of applying the invited error doctrine. (See e.g., *People v. Elder* (2017) 11 Cal.App.5th 123, 134 [stipulation admitting evidence precludes challenge on appeal even if evidence is otherwise inadmissible]; *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 678–680 [oral stipulation in court to binding arbitration precluded both later opposition to confirmation of award for lack of a writing and assertion on appeal that a written stipulation was required, based on judicial estoppel principles].) Finally, the doctrine of invited error does not apply to bar assertion of the claimed error on appeal where the trial court was not misled in any way. (*Norgart, supra*, 21 Cal.4th 403.)

In sum, the doctrine of invited error reflects that courts will not tolerate the taking by parties of inconsistent positions and a party's first position waives the inconsistent second, where the trial court took action on the first position and where the opposing party has relied on a stipulation by, for example, proceeding with a stipulated contractual arbitration ordered by the court. (*Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics, supra,* 61 Cal.App.4th at p. 679.)

Cases discussing the invited error doctrine generally relate it to principles of estoppel but they often also apply waiver principles to the same result—the particular claim is considered beyond the scope of appellate review under either doctrine. Waiver does not necessarily rest on the taking of inconsistent

positions but rather on the intentional relinquishment or abandonment of a known right resulting in the loss of a claim on appeal. (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 435, fn. 8; *Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1167 [distinguishing between waiver and invited error by estoppel but applying both]; *In re Marriage of S.* (1985) 171 Cal.App.3d 738, 745 [same]; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685–1696 [same]; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [same].) In other words, a party who expressly agrees to an action taken by the trial court or in the trial proceedings—such as by signing a stipulation inducing the action—cannot challenge that action on appeal. (*Nevada County Office of Education v. Riles* (1983) 149 Cal.App.3d 767, 779.) Here, we need not separately analyze which doctrine—invited error or waiver—applies or whether both do because the result is the same in either case.

The parties here entered into the joint stipulation and expressly agreed to arbitrate "[a]ll of [Madrigal]'s claims in this case" "pursuant to the terms of the" CVS arbitration agreement, which agreement was specifically identified in the stipulation as "the Arbitration Agreement *entered into between the parties on October 6, 2014.*" (Italics added.) Madrigal's attorney signed the stipulation and did not dispute either its characterization of the CVS arbitration agreement or that Madrigal had entered into that agreement. Further, the stipulation expressly provided that "in the event . . . a dispute arises regarding any term in the [CVS arbitration agreement], neither party has waived its right to have the dispute resolved by the arbitrator." The trial court relied on the joint stipulation by ordering the case to binding arbitration in

21

lieu of determining a petition to compel arbitration under section 1281.2, which Madrigal could have opposed based on the claims she now makes on appeal as to the illegality, unenforceability, or unconscionability of terms, but the merits of which she conceded based on the express terms of the joint stipulation. Further, Madrigal (unsuccessfully) disputed in the arbitral forum that the joint stipulation incorporated the terms of the CVS arbitration agreement, which was consistent with her express agreement to have the arbitrator resolve such disputed terms.

"Stipulations are construed according 'to the ordinary rules employed to interpret contracts. [Citations.] A court's paramount consideration in construing the stipulation is the parties' objective intent when they entered into it. (Civ. Code, § 1636; [citation].)' (*Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 . . . .) [¶] As a contract, a stipulation ' "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636; [citation].) The intention of the parties must be first determined from the language of the contract itself. (Civ. Code, § 1638; [citation].) However, where the language of the contract is ambiguous, it is the duty of the court to resolve the ambiguity by taking into account all the facts, circumstances and conditions surrounding the execution of the contract. (Civ. Code, § 1647; [citation].) In resolving ambiguity, the court may consider not only the express, but the implied terms of the contract as well.' (*Floystrup v. City of Berkeley Rent Stabilization Bd.* (1990) 219 Cal.App.3d 1309, 1317–1318; accord, *Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 544–545.)" (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1252.)

Contrary to the joint stipulation's plain and unambiguous terms concerning the CVS arbitration agreement, Madrigal contends the stipulation does not incorporate that agreement, that the references in the stipulation to the agreement are mere recitals, and that the stipulation is reasonably susceptible to other meanings, requiring extrinsic evidence to construe it as she urges. We reject these claims based on our independent review of the joint stipulation and conclude that Madrigal's textual arguments here are inconsistent with the stipulation's plain language. The CVS arbitration agreement was specifically identified by date and referenced in the stipulation's prefatory "whereas" clauses as the agreement the parties had, in fact, entered into. "Whereas" in this context means "[g]iven the fact that," which manifests assent to the stated fact. (Black's Law Dict. (12th ed. 2024).) The stipulation also stated beyond its prefatory "whereas" clauses that the parties stipulated and agreed that "[a]ll of [Madrigal]'s claims in this case shall be submitted to final and binding arbitration *pursuant to* the terms of the [previously identified and referenced CVS] Arbitration Agreement." (Italics added.) "Pursuant to" means according to or in conformity with, so this plain language in the stipulation expressly and unambiguously incorporated the terms of the CVS arbitration agreement, full stop. (Merriam-Webster Collegiate Dict. (11th ed. 2019) p. 1011.) We need not resort to extrinsic evidence to aid our construction as there is no ambiguity here. Undisputed facts in the record further show that Madrigal's counsel was provided with the full CVS arbitration agreement, including its policy section, before signing the joint stipulation that referred to and incorporated it.

23

Our conclusion is not altered by Madrigal's related contention that because the arbitration agreement was not included with or attached to the joint stipulation, it cannot be incorporated into it. " 'A contract may validly include the provisions of a document not physically a part of the basic contract . . . . "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." ' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1331; see also *Remedial Construction, supra*, 65 Cal.App.5th at p. 663.) The joint stipulation, and the undisputed evidence in the record about the full CVS arbitration agreement having been supplied to Madrigal's counsel before she signed the stipulation, satisfy these requirements. And as noted, the arbitrator in any event found based on substantial evidence in the record that Madrigal had acknowledged her receipt and review, and had read and understood, the policy and procedure section of the arbitration agreement. We do not review the arbitrator's factual findings in any event. (See *Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 99 [reviewing court defers to arbitrator's factual findings].)

We therefore consider Madrigal to have invited and waived all her various claims of error that relate to or stem from her underlying premise that the parties' arbitration contract—the joint stipulation—did not incorporate the terms of the CVS arbitration agreement or that the agreement's terms, including its statute of limitations, did not govern the arbitration.

24

Moreover, as it is the joint stipulation that is the parties' arbitration contract and Madrigal makes no claims as to its unconscionability, we further conclude that her claims of error arising from the purported unconscionability of the CVS arbitration agreement are misplaced and irrelevant. "A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, 'save upon such grounds as exist for the revocation of any contract.' ([] § 1281.) Unconscionability provides such grounds. [Citation.] [¶] The 'general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' [Citations.] Unconscionability has both a procedural and substantive element. [Citation.] The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability. [Citation.]" (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).)

Madrigal makes no attempt to establish the joint stipulation as unconscionable. And by stipulating to arbitration "pursuant to" the CVS arbitration agreement's terms, she effectively accepted the validity of those terms and conceded they were *not* unconscionable and would be applied in the arbitral forum. (See *Ramirez*, *supra*, 16 Cal.5th at p. 492 [unconscionability is defense against enforcement of arbitration agreement].) The trial court's approval of the joint stipulation by ordering the case to binding arbitration based on it subsumed any issues about whether the terms of the joint stipulation, including its incorporated terms from the referenced CVS arbitration agreement, were unconscionable or otherwise

25

unenforceable, except as its terms could be litigated and finally resolved in the arbitral forum as agreed. Because the joint stipulation expressly referred to and incorporated the terms of the CVS arbitration agreement, Madrigal's unconscionability claims as to that agreement are immaterial to the resolution of the appeal and she has invited and waived any claimed error with respect thereto.

We therefore need not and do not reach the merits of all Madrigal's related claims of error—restated in multiple ways and in multiple arguments—that are premised on the contentions that the joint stipulation did not incorporate the CVS arbitration agreement or that the terms of that agreement are unconscionable.

B.      *Grounds to Vacate Award—Legal Standards*

A judgment entered on an order confirming an arbitration award is appealable. (§ 1294, subd. (d).) And the denial of a petition to vacate an arbitration award is appealable from a judgment entered after confirmation of the award. (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1454.)

"The legal standards governing judicial review of arbitration awards are well established. 'California law favors alternative dispute resolution as a viable means of resolving legal conflicts. "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Moncharsh [v. Heily & Blase* (1992) 3 Cal.4th 1, 10 (*Moncharsh*)].) Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties.

(*Id.* at pp. 6, 28.)' " (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 763 (*Sargon*).)

Accordingly, " '[w]here, as here, an arbitrator has issued an award, the decision is ordinarily final and thus "is not ordinarily reviewable for error by either the trial or appellate courts." [Citation.] The exceptions to this rule of finality are specified by statute. . . .' [Citation.]" (*Castelo v. Xceed Financial Credit Union* (2023) 91 Cal.App.5th 777, 787.) The applicable statute is section 1286.2, and as relevant here, subdivisions (a)(4) (section 1286.2(a)(4))—"[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision"—and subdivision (a)(5) (section 1286.2(a)(5))—"[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy."

Notwithstanding the existence of statutory authority for vacating an arbitration award, these specified exceptions to the general limits on judicial review of arbitration awards at section 1286.2 are for extreme circumstances to "protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair. The Legislature has authorized 'judicial review in circumstances involving *serious problems* with the award itself, or with the fairness of the arbitration process.' (*Moncharsh, supra*, 3 Cal.4th at p. 12, italics added.) ' "The statutory provisions for [review of an arbitration award] are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding." ' [Citation.]" (*Heimlich v.*

27

*Shivji* (2019) 7 Cal.5th 350, 368 (*Heimlich*).) An arbitrator's erroneous factual determinations or legal conclusions do not establish grounds to vacate the award. (*Id.* at p. 367.)

"To determine whether an arbitration award should be vacated under . . . section 1286.2, we review the trial court's decision de novo. [Citation.]" (*Bacall, supra,* 61 Cal.App.5th at p. 957; *Brown v. TGS Management Company, LLC* (2020) 57 Cal.App.5th 303, 313; *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1 (*Richey*).)

C.      *Arbitrator Acting in Excess of Powers (Section 1286.2(a)(4))*

Madrigal initially contends the trial court erred by not fully reviewing the arbitration award and that because her claims involve unwaivable FEHA rights, the arbitration award here is subject to "enhanced" review.[12] In support, she cites *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665 (*Pearson Dental*) and, relatedly, *Armendariz, supra,* 24 Cal.4th 83.

1.  Review of Claims Under Section 1286.2(a)(4)

Notwithstanding the ordinary non-reviewability of arbitration decisions, the California Supreme Court has identified "some limited and exceptional circumstances justifying judicial review of an arbitrator's decision," including when an arbitrator exceeds their powers under section 1286.2(a)(4) "by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey, supra*, 60 Cal.4th at p. 916.) An example of this occurred in *Pearson Dental,* where the Supreme Court

---

[12]     Madrigal appears to argue that these grounds for review of an arbitration decision are in addition to the statutory grounds identified at section 1286.2. She is mistaken.

28

held that an arbitrator had made a "clear error of law" that had prevented a party from obtaining a hearing on the merits of their FEHA claim. (*Pearson Dental, supra*, 48 Cal.4th at p. 672.)

Specifically, in *Pearson Dental*, an arbitrator had misapplied section 1281.12—the CAA tolling provision—to the plaintiff's FEHA claims without providing a written explanation, had concluded the plaintiff's claims were untimely, and had issued an arbitration award in favor of the defendant. (*Pearson Dental, supra*, 48 Cal.4th at pp. 671–672.) The plaintiff moved in the trial court to vacate the award and the trial court granted the motion. The court determined that the arbitrator had made a clear legal error and, because it resulted in the waiver of the plaintiff's FEHA rights, had acted in excess of his powers under section 1286.2(a)(4). (*Id.* at p. 672.) The Court of Appeal reversed, finding that, though the arbitrator had misapplied section 1281.12, such legal error was an insufficient ground to vacate the award. (*Ibid.*)

Our Supreme Court disagreed with the Court of Appeal, and held: "[W]hen, as here, an employee subject to a mandatory employment[-] arbitration agreement is unable to obtain a hearing on the merits of his FEHA claims, or claims based on other unwaivable statutory rights, *because of an arbitration award based on legal error*, the trial court does not err in vacating the award. Stated in other terms, construing the CAA in light of the Legislature's intent that employees be able to enforce their right to be free of unlawful discrimination under FEHA, an arbitrator whose legal error has barred an employee subject to a mandatory arbitration agreement from obtaining a hearing on the merits of a claim based on such right has exceeded his or her powers within the meaning of . . . section 1286.2, subdivision

(a)(4), and the arbitrator's award may properly be vacated. (See *Armendariz*, *supra*, 24 Cal.4th at pp. 106–107.)" (*Pearson Dental*, *supra*, 48 Cal.4th at p. 672, italics added.)

Here, as we have already concluded, the joint stipulation incorporated the CVS arbitration agreement, which we accept as a mandatory arbitration agreement of employment-related FEHA claims. And Madrigal was unable to obtain a hearing on the substantive merits of her claims, the arbitrator having concluded the claims were barred by the statute of limitations. Therefore, on review of the trial court's denial of Madrigal's petition to vacate, we ascertain whether the arbitrator exceeded their powers under section 1286.2(a)(4) by committing a "clear error of law" that deprived Madrigal of a hearing on the merits of her unwaivable statutory rights. (*Pearson Dental*, *supra*, 48 Cal.4th at p. 680.) As we explain, we find no such error.

2. Scope of Meaning of Delegated Arbitral Authority

After entering into the joint stipulation that led the trial court to order the dispute to binding arbitration "pursuant to" the CVS arbitration agreement, and after submitting the interpretation of the stipulation to the arbitral forum, Madrigal now contends the trial court, and not the arbitrator, should have determined whether the provisions of the CVS arbitration agreement governed the arbitration, citing *Sargon*.

But *Sargon* did not hold that "whether an agreement to arbitrate exists in the first place, is the province of the court and [an a]rbitrator exceed[s their] power to act otherwise," as Madrigal contends. Instead, relying on *Moncharsh*, *Sargon* concluded that the plaintiff there had not waived an illegality defense to arbitration by not raising it in the trial court pre-award—because the claim would not have been a proper basis for

opposing a petition to compel arbitration under section 1281.2 in the first instance, the defense in that case going not to revocation of the arbitration contract but to the substantive merits of the claim. (*Sargon, supra*, 15 Cal.5th at pp. 761–762, citing *Moncharsh, supra*, 3 Cal.4th at pp. 29–30.)

Here, by contrast, Madrigal entered into the joint stipulation that expressly incorporated the terms of the CVS arbitration agreement, thereby conceding its validity and submitting the interpretation of the stipulation's terms as affecting the scope of arbitration to the arbitrator. She has accordingly waived any claim of error concerning the arbitrator's authority to interpret the joint stipulation as the arbitration contract. Further, unlike in *Sargon*, Madrigal's attacks on the applicability of the CVS arbitration contract on the basis it is unenforceable, illegal, or unconscionable would have been grounds, meritorious or not, to oppose a petition to compel arbitration under section 1281.2 in the trial court, as these are grounds going to revocation of the agreement. (§ 1281.2 [petition to compel arbitration may be denied where grounds exist for rescission of the agreement].)

In sum, Madrigal waived any claim that the arbitrator lacked authority to interpret the terms of the joint stipulation. And the arbitrator's construction of the stipulation as incorporating the CVS arbitration agreement, including its statute of limitations as affected by section 1281.12's tolling provisions, has not been shown to be clear error of the sort described in *Pearson Dental* in any event.

3. Paragraph 4a of CVS Arbitration Agreement

Madrigal specifically contends under section 1286.2(a)(4) that she did not agree to arbitrate her claims under paragraph 4a

31

of the CVS arbitration agreement—which prescribes how to initiate a claim with AAA and explains that this must be done within the claim's statute of limitations or is waived—so the arbitrator's enforcement of this provision exceeded their powers. Again, this assertion is belied by the joint stipulation itself.

As we have already determined, the relevant language of the joint stipulation is not ambiguous. Madrigal agreed that "[a]ll of [her] claims in this case shall be submitted to final and binding arbitration pursuant to the terms of the [CVS] Arbitration Agreement[.]" The "Arbitration Agreement" referred to is expressly "the Arbitration Agreement entered into between the parties on October 6, 2014," without disqualification or equivocation as to whether Madrigal had, in fact, entered into that agreement on that date. And, paragraph 4a, how to initiate a claim, is part of the policy and procedure section of the CVS arbitration agreement.

Again, Madrigal asserts that the reference in the joint stipulation to an arbitration agreement of October 6, 2014, was merely a recital of facts and not a concession or acknowledgment that she had, in fact, entered into the CVS arbitration agreement on that date. She contends she agreed in the joint stipulation to arbitrate only in accordance with AAA's rules, not the CVS arbitration agreement. We reject this contention as a strained interpretation of the stipulation's clear language. (See *Waller v. Truck Ins. Exchange Co.* (1995) 11 Cal.4th 1, 18–19 ["Courts will not strain to create an ambiguity when none exists"].)

We have also already rejected the claim that the terms of the CVS arbitration agreement could not have been incorporated into the joint stipulation because that agreement was not attached to it. This conclusion necessarily precludes the

32

argument that the arbitrator abused her powers by ruling against Madrigal's contention in this respect.

4.  Federal Arbitration Act Preemption

Madrigal suggests, for the first time on appeal and only by articulating a bare and conclusory argument, that the Federal Arbitration Act (9 U.S.C. § 1 et seq. (FAA)) preempts the application in this case of section 1281.12, the tolling provision of the CAA. Based on this assertion, she contends the arbitrator exceeded her powers by applying California law—section 1281.12—to the statute-of-limitations analysis, which led to the conclusion that Madrigal's claims were time-barred. Madrigal cites to the provision of the CVS arbitration agreement stating that "[t]his Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act . . . ," and she reasons that section 1281.12's tolling provisions as a matter of state law should not have applied in the determination whether she met the statute of limitations. We reject this claim.

"[T]he procedural provisions of the CAA apply in *California* courts by default. 'There is *no federal policy* favoring arbitration under a *certain set of procedural rules*. . . .' [Citation.] But the parties may '*expressly* designate that any arbitration proceeding [may] move forward under the FAA's procedural provisions rather than under state procedural law.' [Citation.] Absent such an express designation, however, the FAA's procedural provisions do not apply in state court. [Citation.]" (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174–175.) Here, the arbitration agreement's terms do not expressly designate that the FAA's procedural provisions should apply. Therefore, the procedural provisions of the CAA, including section 1281.12, apply and are not preempted by the FAA.

33

5. Misapplication of Section 1281.12

Madrigal further argues that even if section 1281.12 applies here, the arbitrator misapplied it, exceeding their powers. She contends that the joint stipulation and the order to arbitrate do not "require that arbitration of a controversy be demanded or initiated by a party to the arbitration agreement within a [specified] period of time" under section 1281.12. We reject this contention. As discussed, the joint stipulation incorporates by reference the CVS arbitration agreement, including its policy and procedure. And paragraph 4a of the policy and procedure section of the arbitration agreement requires that the arbitration of a controversy be demanded "within the applicable statute of limitations period," which is described as the same as would apply in court.

Madrigal argues that under paragraph 3 of the policy and procedure of the CVS arbitration agreement, entitled "Claims NOT Covered by this Policy," her claims are not subject to the statute-of-limitations provision of paragraph 4a. She cites language from section 3 that states: "[t]his Policy does not apply to claims raised in litigation pending as of the date an Employee first receives or reviews this Policy." She contends that because she did not consent to arbitration in the joint stipulation until September 18, 2018, the policy and procedure terms of the CVS arbitration agreement do not apply to her claims, which were then pending with her complaint already having been filed on February 20, 2018. We reject this assertion.

Again, as found by the arbitrator, Madrigal reviewed and acknowledged the policy and procedure section of the CVS arbitration agreement on October 6, 2014, and she did not opt out of the agreement within 30 days thereafter. Thus, her claims filed

34

in the trial court on February 20, 2018, were subject to the terms of the CVS arbitration agreement as these claims were not pending on October 6, 2014, the date the joint stipulation indisputably acknowledges as the date the parties entered into the CVS agreement.

Finally, Madrigal argues that section 1281.12 could not have applied in the statute-of-limitations analysis here because there was no "final determination" by the lower court—as that term is used in section 1281.12 to fix the outside tolling date 30 days later—that Madrigal was required to arbitrate the controversy "pursuant to" the CVS arbitration agreement. We reject this argument, too. The trial court's order of September 18, 2018, approving the joint stipulation was a "final determination" requiring the parties to arbitrate "pursuant to" the CVS arbitration agreement. It ordered "[t]hat all of [p]laintiff's claims in this case [be] submitted to final and binding arbitration" based on the joint stipulation so providing. It is immaterial that the order was made on a stipulation instead of as the adjudication of a contested petition to compel arbitration. If anything, Madrigal's entry into the stipulation waived any argument that the court's order based on the stipulation was not a "final determination" requiring the parties to arbitrate the controversy as that term is used in section 1281.12.

Having reviewed the arbitrator's award that provided a fulsome written explanation for the decision that Madrigal's claims were time-barred, we reject Madrigal's argument that the arbitrator exceeded her powers under section 1286.2(a)(4) by "misapplying" section 1281.12 as a tolling provision to the statute-of-limitations analysis. There was no legal or clear error of the type described in *Pearson Dental* that resulted in the

35

deprivation of a hearing on the merits of Madrigal's FEHA claims. This is because the arbitrator's determination that these claims were time-barred, and therefore CVS's dispositive motion should be granted, was correct.

### 6. Remaining Claims on Arbitrator Exceeding Powers

We likewise reject Madrigal's remaining and restated arguments that the arbitrator's other legal rulings exceeded their powers, including those decisions: rejecting Madrigal's unconscionability argument; denying her discovery; and not providing all remedies available in court for FEHA claims. "Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey, supra,* 60 Cal.4th at p. 916.) Absent the limited review described in *Pearson Dental* for clear error based on a violation of a party's nonwaivable statutory rights or clearly defined public policy, which we do not find here, we will not review the arbitrator's other legal findings for error. (*Id.* at p. 918 ["*Pearson Dental* emphasized that its legal error standard did not mean that all legal errors are reviewable"].)

D. *Arbitrator Refusing to Grant a Stay or Hear Material Evidence—Section 1286.2(a)(5)*

Madrigal additionally and alternatively contends the arbitration award should have been vacated under section 1286.2(a)(5) because (1) the arbitrator refused to grant a stay of the proceedings to allow Madrigal to seek "provisional relief" from the court in the form of a determination on the unconscionability of the CVS arbitration agreement; and (2) the arbitrator refused to hear "contrary evidence" or give her an opportunity to obtain material evidence to oppose CVS's

dispositive motion—namely that which might have been developed relating to the enforceability of the CVS arbitration agreement, which the arbitrator deemed immaterial given the determination that the parties' arbitration contract was the joint stipulation and not the CVS agreement.

"[V]acation of an award for 'refusal . . . to hear evidence material to the controversy' (§ 1286.2, subd. (a)(5)) must rest on more than a simple error in applying the rules of evidence.  . . . [S]ection 1286.2 subdivision (a)(5), 'if not properly limited, could swallow the rule that arbitration awards are generally not reviewable on the merits.' The provision is not 'a back door to *Moncharsh* through which parties may routinely test the validity of legal theories of arbitrators.' [Citation.] Instead, it was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' [Citation.] It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue. [Citation.] The [CAA] codifies 'the fundamental principle that "[a]rbitration should give both parties an opportunity to be heard." [Citation.] . . . [T]he opportunity to be heard must be extended to all parties equitably.' [Citation.] To conduct an arbitration without abiding by that principle evinces bias, constituting misconduct." (*Heimlich, supra,* 7 Cal.5th at pp. 368–369.)

Madrigal contends that the arbitrator's rulings—refusing to continue the hearing on CVS's dispositive motion or grant a stay so she could "petition the court for a determination on the unconscionability" of the CVS arbitration agreement, or refusing to allow her the opportunity to discover facts concerning the

unenforceability of the CVS arbitration agreement to oppose CVS's dispositive motion when that agreement was not the relevant arbitration contract—substantially prejudiced her and met the statutory high bar for vacation of the award. These arguments misconstrue the applicability of section 1286.2(a)(5) and its standards for relief.

"[S]ection 1286.2, subdivision (a)(5) does not contemplate vacation of an award merely because arbitrators refuse to consider evidence they find legally irrelevant, even if the irrelevance determination rests upon an incorrect legal foundation." (*Heimlich, supra,* 7 Cal.5th at p. 369.)

In *Heimlich*, the Supreme Court identified *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1108 (*Royal Alliance*), as the "paradigmatic example of when a refusal to hear evidence will justify vacation of an award." (*Heimlich, supra,* 7 Cal.5th at p. 369.) The *Royal Alliance* arbitration panel had allowed a securities broker to "speak, unsworn and at length," but "denied the former client the opportunity to cross-examine the broker or to speak herself" because the panel apparently "felt itself too busy to allow each side the opportunity to present evidence." (*Ibid*; see *Royal Alliance,* at p. 1099.) The panel then issued a decision that "relied on the former client's failure to dispute the broker's account or to offer evidence of financial losses." (*Heimlich*, at p. 369; see *Royal Alliance*, at p. 1099.) In vacating the decision, the appellate court in *Royal Alliance* concluded the arbitration panel's refusal to hear from the former client "was not fair." (*Royal Alliance*, at p. 1110; see *Heimlich*, at p. 369.) Significantly, the Supreme Court in *Heimlich* contrasted the situation in *Royal Alliance* with the situation where arbitrators "refuse to consider evidence they find

legally irrelevant, even if the irrelevance determination rests upon an incorrect legal foundation." (*Heimlich, supra*, at p. 369.) In that situation, "[n]either that determination nor the resulting refusal to consider evidence" is grounds to vacate the award. (*Ibid.*)

Madrigal's arguments under section 1286.2(a)(5) don't come close to the extreme circumstances of *Royal Alliance,* and they provide no basis for a showing of trial court error in denying relief. Further, as to her claim the arbitrator refused to "allow" her to present evidence to contest CVS's dispositive motion, she concedes she submitted a declaration in opposition, undermining this argument. And the record demonstrates that Madrigal did submit an opposition to CVS's motion, accompanied by exhibits. Thus, the record makes clear she was not precluded from opposing the motion.

We also reject Madrigal's remaining claims under section 1286.2(a)(5). These are that the arbitrator acted in violation of AAA's rules by hearing CVS's dispositive motion without having first determined whether there was " 'substantial cause' " that " 'the motion was likely to succeed and dispose of or narrow the issues in the case' " and that the arbitrator erred by failing to decide whether CVS was equitably estopped from arguing that the statute of limitations applied to bar her claims after voluntarily submitting the matter to AAA for arbitration. Again, these arguments are nothing more than claims that the arbitrator committed legal error, which we will not review. (*Richey*, *supra*, 60 Cal.4th at p. 916.)

## IV.   DISPOSITION

The judgment is affirmed. Under Government Code section 12965, subdivision (c)(6), no costs are awarded to respondent.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


WILLIAMS, J.[*]

We concur:


HOFFSTADT, P. J.


MOOR, J.

---

[*] Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.